**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| SPECTRUM PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE BUXTON HELMSLEY GROUP, INC., ALEXANDER ERWIN PARKER, and KELLIE ANN MOORE,<br><br>Defendants. | **Civil Case No. 1:24-cv-12489** |

**SPECTRUM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 1

RELEVANT FACTS ........ 1

A. Moore becomes in-house counsel and agrees to keep Spectrum information confidential and to return company property if she is terminated. ........ 1

B. Moore is terminated but refuses to return her company laptop and documents, instead unlawfully demanding a quid pro quo that would have garnered her millions in exchange ........ 3

C. BHG and Parker seek to extract value from Spectrum's parent, Assertio, based on confidential Spectrum documents and information that Moore gave to them. ........ 3

D. Assertio refuses to give in to the shakedown, and BHG and Parker publish some of Spectrum's confidential documents, promising to publish more ........ 4

E. Spectrum files this civil action to enforce its rights and seeks preliminary relief. ........ 6

ARGUMENT ........ 6

A. Spectrum will prevail on the merits of its claims. ........ 7

1. Moore breached her fiduciary duties as Spectrum's in-house counsel by giving Spectrum's confidential information to BHG and Parker. ........ 7

2. Moore breached her confidentiality obligations under the Agreement by giving Spectrum's confidential information to BHG and Parker. ........ 8

3. BHG and Parker aided and abetted Moore's breach of fiduciary duties by directing her to give Spectrum's confidential documents to third parties. ........ 9

4. BHG and Parker tortiously interfered with Spectrum's right to confidentiality under the Agreement by directing Moore to give Spectrum's confidential documents to third parties. ........ 10

5. Defendants violated the federal Computer Fraud and Abuse Act by accessing information on the Spectrum laptop without authorization and by threatening to impair the confidentiality of said information. ........ 11

B. Spectrum will suffer irreparable harm without injunctive relief—as Moore agreed and as the law presumes—because once made public online, it is impossible to

make Spectrum's confidential documents non-public again. ....................................... 12

C. There is no adequate remedy at law; once confidential documents are made public online, they cannot be made un-public. ........................................................................ 14

D. The balance of harms and public interest favor Spectrum because Defendants have no right to disclose Spectrum's confidential documents in the first place. .................. 14

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*3M v. Pribyl*,
259 F.3d 587 (7th Cir. 2001) ....13

*Act II Jewelry, LLC v. Wooten*,
318 F. Supp. 3d 1073 (N.D. Ill. 2018) ....10

*Coady v. Harpo, Inc.*,
719 N.E.2d 244 (Ill. App. 1999) ....8

*Dulisse v. Park Int'l Corp.*,
1998 WL 25158 (N.D. Ill. Jan. 9, 1998) ....13

*Fowler v. Varian Assocs., Inc.*,
241 Cal. Rptr. 539 (Ct. App. 1987) ....8

*Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) ....13

*Hosp. Staffing Sols., LLC v. Reyes*,
736 F. Supp. 2d 192 (D.D.C. 2010) ....12

*Huawei Techs. Co., Ltd. v. Motorola, Inc.*,
2011 WL 612722 (N.D. Ill. Feb. 22, 2011) ....15

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
362 F. Supp. 3d 558 (N.D. Ill. 2019) ....11

*In re Marriage of Decker*,
606 N.E.2d 1094 (Ill. 1992) ....7

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
400 F.3d 1007 (7th Cir. 2005) ....7

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
765 F. Supp. 1310 (N.D. Ill. 1990) ....13

*Latona v. Aetna U.S. Healthcare Inc.*,
82 F. Supp. 2d 1089 (C.D. Cal. 1999) ....8

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*,
2004 WL 1899923 (N.D. Ill. Aug. 12, 2004) ....14

*McMahan v. Deutsche Bank AG*,
938 F. Supp. 2d 795 (N.D. Ill. 2013) ....9

*Nasrawi v. Buck Consultants LLC*,
179 Cal. Rptr. 3d 813 (2014) ....................9

*Nucap Indus. Inc. v. Robert Bosch LLC*,
2016 WL 11812416 (N.D. Ill. Aug. 29, 2016) ....................13

*Oasis W. Realty, LLC v. Goldman*,
250 P.3d 1115 (Cal. 2011) ....................7, 8

*PepsiCo, Inc. v. Redmond*,
54 F.3d 1262 (7th Cir. 1995) ....................9

*Reeves v. Hanlon*,
95 P.3d 513 (Cal. 2004) ....................10

*Roland Mach. Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) ....................14

*Scognamillo v. Credit Suisse First Bos. LLC*,
2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) ....................9, 12

*Surgipath Med. Indus., Inc. v. O'Neill*,
2009 WL 10713821 (N.D. Ill. June 19, 2009) ....................6, 7

*Vendavo, Inc. v. Long*,
397 F. Supp. 3d 1115 (N.D. Ill. 2019) ....................14

**STATUTE**

18 U.S.C. § 1030 ....................11, 12

**RULES AND REGULATIONS**

17 C.F.R. § 240.10b-5 ....................15

Cal. R. Prof'l Conduct 1.9 ....................2, 7

Fed. R. Civ. P. 65 ....................1, 6

Ill. R. Prof'l Conduct 1.9 ....................7

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 876(B) ....................9

## INTRODUCTION

Defendants are in possession of what they have touted as an "extensive trove" of Spectrum's confidential and proprietary documents and trade secrets. As part of an unlawful scheme to enrich themselves at Spectrum's expense, Defendants recently published some of that information, and have threatened to publish more.

Pursuant to Federal Rule of Civil Procedure 65, Spectrum respectfully requests a temporary restraining order and a preliminary injunction to prevent further irreparable harm while Spectrum vindicates its rights in this civil action. Specifically, Spectrum requests a TRO and preliminary injunction barring Defendants from further disseminating Plaintiff's confidential and proprietary documents pending the resolution of this legal action.

## RELEVANT FACTS

Plaintiff Spectrum Pharmaceuticals, Inc. ("Spectrum") is a biopharmaceutical company that develops prescription drugs for cancer patients. Patel Decl. ¶ 5. Its key product is a drug called Rolvedon. *Id.* ¶ 6. As the result of a merger in July 2023, Spectrum is now a wholly owned subsidiary of Assertio Holdings, Inc. ("Assertio"). *Id.* ¶ 4. In the three quarters ending September 2024, Spectrum's sales of Rolvedon exceeded $44 million. *Id.* ¶ 7.

Defendant Buxton Helmsley Group, Inc. ("BHG") is a short-seller owned and managed by its sole director and employee, Defendant Alexander Erwin Parker ("Parker"). *See* Ex. 8 & Ex. 14.[1] Defendant Kellie Ann Moore ("Moore") is a former in-house attorney at Spectrum, who was let go in early 2019 as part of a reduction in force. Ex. 2; Ex. 7 at 48:7–49:25.

### A. Moore becomes in-house counsel and agrees to keep Spectrum information confidential and to return company property if she is terminated.

In May 2017, Spectrum hired Moore as in-house counsel. Ex. 7 at 62:13–20. As

[1] Unless otherwise indicated, all "Ex." citations refer to exhibits to the Sadler Declaration.

Spectrum's counsel, Moore owed various fiduciary duties toward Spectrum, including duties of loyalty and confidentiality. Even in her status as former counsel for Spectrum, Moore remains bound by a duty of confidentiality with respect to Spectrum's non-public information she obtained in her role as a lawyer for the company. *See* Cal. R. Prof'l Conduct 1.9(c).

In connection with her employment as counsel, Moore also signed an employee obligation agreement with Spectrum ("Agreement"). The Agreement "confirm[ed] the parties' understanding with respect to . . . [Moore's] agreement to protect and preserve information and property which is confidential and proprietary to the Company [i.e., Spectrum]." Ex. 1 at 3.

Section 2 of the Agreement contained a confidentiality provision: "You will at all times, both during the period while you are affiliated with the Company and after the termination of your affiliation with the Company for any reason or for no reason, maintain in confidence and will not, either directly or indirectly, without the prior written consent of the Company, use, disclose, or give to others any Confidential Information." *Id.* § 2. The term "Confidential Information" was defined broadly as including but not limited to information regarding product tests, test results, assessments, and other trade secrets of Spectrum. *Id.* § 1(a)(ii).

Section 2 of the Agreement further provided for the return of Spectrum's property upon Moore's separation from the company: "Upon the termination of [Moore's] affiliation with the Company . . . [Moore] will return to the Company . . . all tangible Confidential Information and copies thereof . . . [and] deliver to the Company . . . any property of the Company . . . which may be in [her] possession." *Id.* § 2.

In Section 7(k) of the Agreement, Moore "expressly acknowledge[d] that any breach or threatened breach of any of the terms and/or conditions set forth in Section . . . 2 . . . of this Agreement will result in substantial, continuing and irreparable injury to the Company." *Id.* § 7(k).

"Therefore, in addition to any other remedy that may be available to the Company . . . the Company . . . will be entitled to injunctive or other equitable relief by a court of appropriate jurisdiction, without posting bond, in the event of any breach or threatened breach of the terms of Section . . . 2 . . . of this Agreement." *Id.*

### B. Moore is terminated but refuses to return her company laptop and documents, instead unlawfully demanding a quid pro quo that would have garnered her millions in exchange.

In 2019, when Spectrum informed Moore that she would be let go as part of a reduction in force, Moore was told to return her company laptop. Ex. 3 at 2. She did not. Ex. 7 at 194:7–17. In addition to the company laptop, Moore kept "thousands" of confidential documents, many of which she admits contain Spectrum trade secrets and confidential, proprietary information. *Id.* at 24:22, 25:15–17.

### C. BHG and Parker seek to extract value from Spectrum's parent, Assertio, based on confidential Spectrum documents and information that Moore gave to them.

In April 2024, BHG through its sole employee, Parker, began a campaign of threats and harassment against Assertio, threatening "scorched earth" measures unless Assertio agreed to put him on the company's Board of Directors. Ex. 9 at 2.

On June 10, 2024, Parker sent another letter to Assertio in BHG's name, this time stating that he made contact with "whistleblowers" who claimed that Spectrum had "made false statements and submitted falsified records and clinical data related to Rolvedon," which in Parker's view threatened the drug's FDA approval, and that Spectrum had attempted to buy the silence of said whistleblowers. Ex. 10 at 1. Parker reiterated his demand to be placed on Assertio's Board, saying, "It is your choice whether we reach an agreement peacefully or are forced to operate under 'scorched earth' policy to forcibly obtain representation on the Board." *Id.* at 5.

When Assertio asked for more details about Parker's allegations against Spectrum, he

ignored Assertio's request and instead declared his intent to "move to more aggressive tactics." Parker also revealed the source of his information: "Kellie Moore." Ex. 11 at 1.

### D. Assertio refuses to give in to the shakedown, and BHG and Parker publish some of Spectrum's confidential documents, promising to publish more.

Assertio realized that, in violation of her contractual and fiduciary obligations, Moore had given Spectrum's confidential documents and information to BHG and Parker. Parker's August 20, 2024 letter to Assertio revealed that Moore had shared some of the confidential documents and information she took from Spectrum with BHG/Parker. The letter described "Kellie Moore[']s] . . . extensive trove of (Spectrum-related fraud) evidence (all of which "BHG has declined to view, but has directed [Moore] to share with BHG's legal counsel for safekeeping)." Ex. 12 at 4.

In the same letter, Parker offered Assertio a way to avoid further harassment, through a scheme that would enrich BHG, Parker, and Moore—at the expense of Spectrum and Assertio's public stockholders. Under the scheme, Assertio would have to (a) enter into a "cooperation agreement" with BHG, (b) place Parker on Assertio's Board, (c) pay Moore's legal fees—she had been involved in separate arbitration with Spectrum— and (d) file a baseless *qui tam* False Claims Act suit against Spectrum, and (e) give Moore "a share" of the "bounty" Parker imagined Assertio would receive by filing suit against Spectrum. *Id.*

Assertio refused Parker's unlawful and inappropriate proposal, instead sending letters through its outside counsel to BHG and BHG's counsel—Eamon O'Kelly at Blank Rome LLP—making clear to them that the information Moore provided to them was Spectrum's confidential information and that any disclosure would be a breach of Moore's fiduciary and contractual obligations. Specifically, Assertio informed them that "any Spectrum documents Ms. Moore retained from Spectrum are documents she received from Spectrum in her capacity as its in-house counsel and pursuant to a confidentiality agreement, such that any . . . disclosure of Spectrum's

confidential information would be a violation of her professional and contractual duties." Ex. 13 at 4–5. Assertio demanded the return of all such documents. *Id.* at 5. Blank Rome never responded, and on September 19 Assertio and Spectrum learned from BHG/Parker's new counsel—Schulte Roth & Zabel LLP—that Blank Rome had ceased representing BHG/Parker.

On Friday, November 8, 2024, Parker issued a press release and letter to the holders of Assertio's stock, announcing that he had taken a "short" position on Assertio's stock—betting the price of the stock would soon decline. Ex. 14; Ex. 15. The letter asserted that "Assertio equity now has zero long-term value" due to a "glaring and indefensible floodlight of evident tort-related product liability that we [i.e., Parker] foresee as being rapidly and imminently revealed." Ex. 15 at 1–2. Parker then threatened to release more documents, warning that if Assertio "den[ied] these matters" or "if the Board is so brazen as to initiate any litigation over these matters . . . , we [Parker] will also then begin releasing pieces of evidence to reinforce who the honest ones are in this situation—that is, clearly BHG." *Id.* at 21.

On Monday, November 11, Assertio's CEO publicly responded, refuting BHG/Parker's frivolous claims of wrongdoing. Ex. 16. Undeterred, Parker issued another press release the same day, titled "Buxton Helmsley Releases Evidence of Product-Related Faud at Assertio." Ex. 17. In connection, Parker posted to BHG's website photographs of documents from Moore's Spectrum laptop. Ex. 18; Ex. 22.

On November 15, BHG/Parker issued yet another press release, designed to garner headlines and continue the manipulation of Assertio's stock price and benefit BHG/Parker's short position. This press release described and linked to a letter Parker says he sent that same day to the United States Senate Committee on Health, Education, Labor & Pensions, making the same false allegations as previously and including links to the prior press releases. Ex. 19 & Ex. 20.

BHG/Parker's false allegations were circulated by industry news sources, including Oncology News Central's daily news scan under "headlines that matter most." Ex. 21 at 1, 6–7.

### E. Spectrum files this civil action to enforce its rights and seeks preliminary relief.

Spectrum filed the instant lawsuit to enforce its rights (1) pursuant to Moore's fiduciary duties owed to Spectrum as her former client; (2) pursuant to the Agreement with Moore; (3) against BHG and Parker's aiding and abetting of Moore's breach of fiduciary duties; (4) against BHG and Parker's tortious interference with Spectrum's confidentiality agreement with Moore; and (5) under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Spectrum now seeks a temporary restraining order and preliminary relief under Federal Rule of Civil Procedure 65.[2]

## ARGUMENT

Rule 65 permits the Court to issue a TRO if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"The standard for the issuance of a TRO is the same standard that is applied for the issuance of a preliminary injunction." *Surgipath Med. Indus., Inc. v. O'Neill*, 2009 WL 10713821, at *2 (N.D. Ill. June 19, 2009). "To obtain a preliminary injunction, a plaintiff must demonstrate (1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at law." *Id.* (citing *Incredible*

[2] BHG and Parker are no strangers to TROs and preliminary injunctions. In one of their prior attempts to interfere with the governance of a pharmaceutical company, a federal bankruptcy judge granted a TRO against them after a hearing at which Parker refused to answer any questions, declaring, "I must exercise my fifth right [sic] amendment." Ex. 4 at 24:6; *see* Ex. 5. BHG and Parker thereafter agreed to a preliminary injunction against them. Ex. 6.

*Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005)). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted." *Id.*

**A. Spectrum will prevail on the merits of its claims.**

**1. Moore breached her fiduciary duties as Spectrum's in-house counsel by giving Spectrum's confidential information to BHG and Parker.**

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). "Among [an attorney's] fiduciary obligations [are] the duties of loyalty and confidentiality, which continue[] in force even after the representation has ended." *Id.* "Accordingly, an attorney is forbidden to do either of two things after severing the relationship with a former client. The attorney may not do anything which will injuriously affect the former client in any matter in which the attorney formerly represented the client nor may the attorney at any time use against the former client knowledge or information acquired by virtue of the previous relationship." *Id.* (alterations adopted); *see also* Cal. R. Prof'l Conduct 1.9 cmt. 1.[3]

Here, Moore had a fiduciary relationship with Spectrum as its in-house counsel, but she breached her fiduciary duties of loyalty and confidentiality by giving to BHG, Parker, and their counsel confidential and proprietary documents and information she obtained by virtue of her employment at Spectrum. Parker confirmed that BHG's source of information was Moore. Ex. 11 at 2; Ex. 12 at 4. It is therefore clear that Moore breached her fiduciary obligations to Spectrum. As a direct result of Moore's breach of fiduciary duties, Spectrum was forced to respond to BHG

[3] Illinois law, to the extent it applies, is the same in this regard. *E.g.*, *In re Marriage of Decker*, 606 N.E.2d 1094, 1102 (Ill. 1992) ("In addition to the attorney-client privilege, there exists the attorney's rule of confidentiality, which encompasses the attorney-client privilege as well as the attorney's fiduciary duty to his client."); Ill. R. Prof'l Conduct 1.9(c) (providing that attorneys generally may not reveal information relating to former clients).

and Parker's baseless attack on the safety and data integrity of Spectrum's sole marketed product, incurring substantial costs and expenses which are ongoing. Patel Decl. ¶ 10; *see Oasis W. Realty*, 250 P.3d at 1122 (legal fees and costs incurred in investigating and responding to a breach of counsel's duties of loyalty and confidentiality are cognizable damages).

Spectrum is likely to succeed on its breach-of-fiduciary claim against Moore.

**2. Moore breached her confidentiality obligations under the Agreement by giving Spectrum's confidential information to BHG and Parker.**

"A postemployment restrictive covenant will be enforced if its terms are reasonable." *Coady v. Harpo, Inc.*, 719 N.E.2d 244, 250 (Ill. App. 1999) (citation omitted). In particular, a "confidentiality agreement [that] restricts [a former employee's] ability to disseminate confidential information that she obtained or learned while in [a company's] employ" is reasonable. *Id.*[4]

Here, the Agreement was for the purpose of "protect[ing] and preserv[ing] information and property which is confidential and proprietary to" Spectrum. Ex. 1 at 3. And in Section 2 of the Agreement, Moore covenanted, even "after the termination of [her] affiliation with the Company," to "maintain in confidence and . . . not, either directly or indirectly, . . . use, disclose, or give to others any Confidential Information" she received in her role at Spectrum. *Id.* § 2.

Moore breached her duties under the Agreement by disclosing or giving Spectrum's Confidential Information to BHG, Parker, and their counsel. Parker confirmed that BHG's source of information was Moore. Ex. 11 at 2; Ex. 12 at 4. It is therefore clear that Moore breached her obligations under the Agreement to protect and preserve Spectrum's confidential and proprietary information. *See, e.g., PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995) (enforcing

[4] California law, to the extent it applies, is the same in this regard. *E.g., Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) ("Employment restrictions that serve to protect a former employer's trade secrets, proprietary information, and confidential information are valid in California."); *Fowler v. Varian Assocs., Inc.*, 241 Cal. Rptr. 539, 545 (Ct. App. 1987) (noting that "agreements designed to protect an employer's proprietary information to not violate [California law].").

confidentiality contract and affirming grant of preliminary injunction). Spectrum was injured as a direct result of Moore's breach of her confidentiality obligations. Patel Decl. ¶ 10.

Spectrum is likely to succeed on its breach-of-contract claim against Moore.

### 3. BHG and Parker aided and abetted Moore's breach of fiduciary duties by directing her to give Spectrum's confidential documents to third parties.

"To properly allege that a defendant is liable for aiding and abetting a breach of fiduciary duty, a plaintiff should also allege facts to show the defendant knew that the other's conduct constituted a breach of duty and gave substantial assistance or encouragement to the other so to conduct himself." *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (citing Restatement (Second) of Torts § 876(B)).[5]

Here, BHG and Parker knew that Moore owed a fiduciary duty to Spectrum because they knew she was Spectrum's in-house counsel. On August 27, Assertio sent a letter to BHG and Parker's counsel informing them that "any Spectrum documents Ms. Moore retained" are documents she received "in her capacity as its in-house counsel and pursuant to a confidentiality agreement, such that any . . . disclosure of Spectrum's confidential information would be a violation of her professional and contractual duties." Ex. 13 at 4–5. Yet, in Parker's own words, "BHG . . . directed" Moore "to share with BHG's legal counsel" the "extensive trove" of Spectrum documents. Ex. 12 at 4. Additionally, by November 11, 2024, Parker obtained documents from Moore so that he could post them on BHG's website along with his press release. Ex. 17; Ex. 18. BHG and Parker gave more than the requisite "encouragement" to Moore to breach her fiduciary

---

[5] California law, to the extent it applies, is similar in this regard. *E.g.*, *Scognamillo v. Credit Suisse First Bos. LLC*, 2005 WL 2045807, at *4 (N.D. Cal. Aug. 25, 2005) ("To be liable for aiding and abetting breach of a fiduciary duty, a defendant must have knowledge of the breach and must have substantially assisted or encouraged the breach."), *aff'd sub nom. Scognamillo v. Credit Suisse First Bos.*, 254 F. App'x 669 (9th Cir. 2007); *Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d 813, 825 (2014) (elements of aiding-and-abetting claim include, in addition to an underlying breach, that the defendant knew of the fiduciary duties and "provided substantial assistance of encouragement" in committing the breaches).

duties—they told her to do it.

Spectrum is likely to succeed on its aiding-and-abetting claim against BHG and Parker.

**4. BHG and Parker tortiously interfered with Spectrum's right to confidentiality under the Agreement by directing Moore to give Spectrum's confidential documents to third parties.**

"To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004). "To establish the claim, the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action." *Id.*[6]

As with Moore's fiduciary duties, BHG and Parker knew about Spectrum's rights under its Agreement with Moore because Assertio advised them of the same. Ex. 13 at 4–5. Despite this knowledge, Parker obtained confidential documents from Moore so that he could post them on BHG's website—and issued press releases directing the public to view the linked website—resulting in yet another breach of Moore's obligation to "maintain in confidence" and not "directly or indirectly" "use, disclose, or give to others any Confidential Information." Ex. 1 § 2. BHG and Parker thus intentionally interfered with Spectrum's contractual rights under the Agreement without lawful justification, causing Spectrum harm, including but not limited to the costs of

[6] Illinois law, to the extent it applies, is similar in this regard. *E.g.*, *Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1083 (N.D. Ill. 2018) (noting that the elements of tortious interference with contract are "(1) the existence of a valid contract between it and another; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) an actual breach of the contract; and (5) damages").

investigating and responding to Moore's breaches of her obligations under the Agreement.

Spectrum is likely to succeed on its tortious-interference claim against BHG and Parker.

**5. Defendants violated the federal Computer Fraud and Abuse Act by accessing information on the Spectrum laptop without authorization and by threatening to impair the confidentiality of said information.**

The federal Computer Fraud and Abuse Act ("CFAA") makes it unlawful to "intentionally access[] a computer without authorization or [in excess of] authorized access" and thereby obtain "information from any protected computer." 18 U.S.C. §§ 1030(a)(2) & (a)(2)(C). A "protected computer," in turn, "means a computer . . . which is used in or affecting interstate or foreign commerce or communication . . . or . . . that . . . has moved in or otherwise affects interstate or foreign commerce." *Id.* § 1030(e)(2).

Moore violated the CFAA. The Spectrum laptop that Moore unlawfully kept was a "protected computer" because it was used for Spectrum's business, thus affecting interstate commerce. *See id.* When Spectrum terminated Moore and instructed her to return her laptop, it revoked Moore's access to the laptop. Ex. 3. Thus, when Moore accessed the laptop to send Spectrum's documents and other confidential information to Parker, she intentionally accessed a protected computer without authorization for the purpose of obtaining information from it. *See* 18 U.S.C. § 1030(a)(2); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 570 (N.D. Ill. 2019) (noting that "computer owners have the power to revoke the authorizations they grant," such that a person can "run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly" (internal quotation marks omitted)).

BHG and Parker, too, violated the CFAA. The statute makes it a violation for anyone, "with intent to extort from any person any money or other thing of value," to "transmit[] in interstate . . . commerce any communication containing any . . . threat to obtain information from a protected computer without authorization . . . or to impair the confidentiality of information

obtained from a protected computer without authorization." 18 U.S.C. §§ 1030(a)(7) & (a)(7)(B).[7] Here, Parker through BHG issued numerous letters to Assertio and Spectrum in Illinois, containing threats to obtain confidential information from Moore and her laptop and to impair the confidentiality of that information by publishing it online, if Assertio did not accede to Parker's demands, including appointing Parker to Assertio's Board of Directors and giving Moore "a share" of the "bounty" from their imagined FCA lawsuit against Spectrum.

Spectrum is entitled to maintain a private cause of action against Moore, BHG, and Parker for violating the CFAA because it has suffered "loss" aggregating "at least $5,000 in value" as a result of Defendants' violations. 18 U.S.C. §§ 1030(g) & (c)(4)(A)(i)(I).

Spectrum is likely to succeed in its CFAA claims against all Defendants.

**B. Spectrum will suffer irreparable harm without injunctive relief—as Moore agreed and as the law presumes—because once made public online, it is impossible to make Spectrum's confidential documents non-public again.**

BHG has already published some of the confidential Spectrum documents that Moore wrongfully kept from her time at Spectrum. And BHG and Parker have threatened additional publications. Spectrum seeks a TRO and preliminary injunction to prevent Defendants from further disclosing Spectrum's confidential and proprietary information while this civil action is pending. Without such relief, Spectrum will suffer irreparable harm.

***First***, courts have "recognized that the disclosure of confidential information can constitute an irreparable harm because such information, once disclosed, loses its confidential nature." *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010); *see also 3M v. Pribyl*, 259

[7] There is also a conspiracy provision, 18 U.S.C. § 1030(b), which applies because BHG, Parker, and Moore all agreed that Moore would access Spectrum's protected computer for the purpose of obtaining information therefrom without authorization and for the purpose of extorting money and a Board position from Assertio and Spectrum by threatening to obtain information from the Spectrum laptop and to "impair the confidentiality" of the confidential information on the Spectrum laptop, 18 U.S.C. § 1030(a)(7)(B). All three Defendants violated the conspiracy provision.

F.3d 587, 609 (7th Cir. 2001) ("Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data." (citation omitted)). This is why "[t]here is a presumption of irreparable harm to the plaintiff in cases of trade secret misappropriation." *Nucap Indus. Inc. v. Robert Bosch LLC*, 2016 WL 11812416, at *17 (N.D. Ill. Aug. 29, 2016).

***Second***, given that Moore is in possession of "thousands" of pages of documents, many of which contain Spectrum's proprietary information, Ex. 7 at 24:22, 25:15–17, there is no telling what documents Defendants will publish next or what the impact will be on Spectrum's business. *See ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1334–35 (N.D. Ill. 1990) (irreparable harm found where defendant was "likely to continue to misappropriate, use and disclose" the plaintiff's trade secrets "unless enjoyed by th[e] Court"). BHG and Parker's use of Spectrum's confidential information to give their false and disparaging statements about Rolvedon the patina of legitimacy undermines Spectrum's goodwill with its customers and the value of its key product in ways that may not be quantifiable. Patel Decl. ¶ 11; *see Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("We have stated that showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."); *Dulisse v. Park Int'l Corp.*, 1998 WL 25158, at *4 (N.D. Ill. Jan. 9, 1998) (finding "harm to [a company's] reputation and good will" sufficiently irreparable).

***Third***, Moore "expressly acknowledge[d]" in the Agreement "that any breach or threatened breach" of her confidentiality obligations "will result in substantial, continuing and irreparable injury" to Spectrum. Ex. 1 § 7(k). Indeed, Moore went further and agreed that, "in the event of any breach" by her, Spectrum "will be entitled to injunctive or other relief by a court of appropriate jurisdiction, without positing bond." *Id.*

Accordingly, declining to issue an injunction will result in irreparable harm to Spectrum.

### C. There is no adequate remedy at law; once confidential documents are made public online, they cannot be made un-public.

For the same reasons that Spectrum's harm is irreparable, Spectrum lacks an adequate remedy at law. *See Vendavo, Inc. v. Long,* 397 F. Supp. 3d 1115, 1143 (N.D. Ill. 2019) (remarking that the factors of irreparable harm and lack of adequate remedy at law "tend to merge"). Further, damages will probably be unavailable to Spectrum in this case as compensation. This is because if Defendants publish additional Spectrum confidential information that harms Spectrum's sales of Rolvedon (which has had more than $44 million in sales during the first three fiscal quarters of 2024), there is a very real likelihood that Defendants—two individuals and BHG, which manages only around $3 million in assets according to its most recent Investment Adviser Registration—will be insolvent and unable to pay Spectrum's damages, costs, and attorneys' fees when the case is over. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("Damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected."). Additionally, it may be difficult to fully connect any particular lost sale of Rolvedon or loss of good will to Defendants' conduct, making damages an incomplete remedy. Patel Decl. ¶ 11; *see Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 2004 WL 1899923, at *2 (N.D. Ill. Aug. 12, 2004) ("[W]here actual damage is difficult to calculate . . . there may be no adequate remedy at law.").

Equitable relief for Spectrum is therefore a necessary recourse.

### D. The balance of harms and public interest favor Spectrum because Defendants have no right to disclose Spectrum's confidential documents in the first place.

Finally, the balance of hardships compels granting Spectrum's request for emergency, preliminary injunctive relief. In contrast to Defendants, who have no right to disclose Spectrum's confidential documents, which they acquired improperly and without authorization—and therefore

would suffer no meaningful prejudice by being enjoined from doing so—Spectrum will suffer irreparable injury because its confidential documents cannot be made non-public again.

Spectrum's request is narrow. This is not, for example, a case in which a company seeks to prevent a former employee from being gainfully employed again. Nor does BHG have a legal right to issue materially misleading information about Spectrum to the public markets in an attempt to manipulate the stock price and thus profit from Assertio's stockholders. *See*, *e.g.*, 17 C.F.R. § 240.10b-5.

On the public-interest side of the scale, "[t]he public interest is well-served by enforcing valid agreements and protecting trade secrets." *Huawei Techs. Co., Ltd. v. Motorola, Inc.*, 2011 WL 612722, at *10 (N.D. Ill. Feb. 22, 2011). The public is also well-served by enforcing the fiduciary duties of counsel to their clients and by protecting those duties from interference by BHG, Parker, and their ilk.

Spectrum merely requests that the Court enter an order restraining Defendants from further disclosing Spectrum's confidential documents and information in violation of its rights while this lawsuit is pending.

## **CONCLUSION**

For the foregoing reasons, Spectrum respectfully requests that the Court grant its motion for a TRO and preliminary injunction, the terms of which are set forth in the accompanying Application for a Temporary Restraining Order and Preliminary Injunction.

Dated: December 5, 2024

**BAKER BOTTS L.L.P.**

*/s/ Kevin M. Sadler*
Kevin M. Sadler (*pro hac vice forthcoming*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7500

Scott D. Powers (*pro hac vice forthcoming*)
401 South 1st Street, Suite 1300
Austin, Texas 78704
(512) 322-2500

John B. Lawrence
(*pro hac vice forthcoming*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
(214) 953-6873

James J. Beha II (*pro hac vice forthcoming*)
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500

*Counsel for Plaintiff Spectrum Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that when each Defendant is served with process in this lawsuit pursuant to Federal Rule of Civil Procedure 4, a copy of the foregoing document will be delivered alongside the summons and complaint.

*/s/ Kevin M. Sadler*
Kevin M. Sadler