**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPECTRUM PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE BUXTON HELMSLEY GROUP, INC., ALEXANDER ERWIN PARKER, and KELLIE ANN MOORE,<br><br>Defendants. | **Civil Case No. 1:24-cv-12489**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

RELEVANT FACTS ................................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

A. Spectrum Will Not Prevail on the Merits of Its Claims. ...................................................................... 5

1. Moore did not breach her fiduciary duties to Spectrum because she did not provide confidential or privileged material to Defendants. ........................................................................................... 5

2. Moore did not breach her alleged contractual confidentiality obligations to Spectrum because she did not provide confidential or privileged material to Defendants. ........................................................ 6

3. Defendants did not aid and abet any breach by Moore of her fiduciary duties to Spectrum because they did not receive, or instruct Moore to share, any confidential or privileged material from Moore. ... 6

4. Defendants did not tortiously interfere with any agreement between Spectrum and Moore because Defendants were not aware of any such agreement and did not direct Moore to give Spectrum's information to third parties. ............................................................................................................ 7

5. BHG/Parker did not violate the federal Computer Fraud and Abuse Act. ..................................... 9

B. Spectrum Will Not Suffer Irreparable Harm if the Court Denies Injunctive Relief. ......................... 10

C. Plaintiffs Would Have an Adequate Remedy at Law. ...................................................................... 12

D. The Balance of Harms and Public Interest Considerations favor Defendants. ................................. 12

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M v. Pribyl*,
259 F.3d 587 (7th Cir. 2001) ........ 11

*Am. Guardian Warranty Servs. v. JCR-Wesley Chapel, LLC*,
2017 U.S. Dist. LEXIS 77100 (N.D. Ill. 2017) ........ 10, 11

*Ameritech v. Voices for Choices, Inc.*,
2003 U.S. Dist. LEXIS 8023 (N.D. Ill. May 9, 2003) ........ 4

*E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*,
414 F.3d 700 (7th Cir. 2005) ........ 10

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*,
549 F.3d 1079 (7th Cir. 2008) ........ 12

*H-D, U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
2021 U.S. Dist. LEXIS 187253 (N.D. Ill. Sept. 24, 2021) ........ 12

*Huawei Techs. Co., Ltd. v. Motorola, Inc.*,
2011 U.S. Dist. LEXIS 17165, – 32 (N.D. Ill. Feb. 22, 2011) ........ 13

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
765 F. Supp. 1310 (N.D. Ill. 1990) ........ 11

*McMahan v. Deutsche Bank AG*,
938 F. Supp. 2d 795 (N.D. Ill. 2013) ........ 7

*O'Connor v. Board of Education*,
645 F.2d 578 (7th Cir. 1981) ........ 5, 12

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) ........ 5, 10

*Overwell Harvest, Ltd. v. Trading Techs. Int'l, Inc.*,
114 F.4th 852 (7th Cir. 2024) ........ 7

*Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*,
2024 U.S. Dist. LEXIS 113461 (N.D. Ill. June 27, 2024) ........ 8

*United African Org. v. Biden*,
620 F. Supp. 3d 756 (N.D. Ill. 2022) ........ 4

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (U.S. 2008) ........ 10, 11

**Statutes**

Computer Fraud and Abuse Act ........ 9, 10

False Claims Act .......................................................................................................................... 10

## INTRODUCTION

Defendants The Buxton Helmsley Group, Inc. ("BHG") and Alexander Erwin Parker ("Parker") (collectively, "Defendants"), oppose Plaintiff Spectrum Pharmaceutical, Inc.'s ("Spectrum" or "Plaintiff") request for a temporary restraining order ("TRO") and preliminary injunction against Defendants (the "Motion"). BHG is a shareholder of Assertio Holdings, Inc. ("Assertio"), of which Spectrum is a wholly owned subsidiary. BHG hired outside counsel to undertake an independent investigation of Assertio's 2023 acquisition of Spectrum, which resulted in a massive dilution of shareholder value after Assertio publicly admitted, post-acquisition, to having overvalued Spectrum's primary product, Rolvedon, by seventy-five percent (75%). The investigation—which was handled by the law firm Blank Rome LLP ("Blank Rome")—uncovered multiple internal reports of fraud relating to Rolvedon.

Plaintiff's Motion generally alleges that Defendants and their co-defendant, Kellie Ann Moore ("Moore")—a former in-house attorney for Plaintiff who was terminated in 2019 after blowing the whistle on fraud related to Rolvedon clinical data—are involved in a scheme to harm Assertio/Spectrum for their own personal profit, and that Moore strategically fed Defendants confidential and privileged material she unlawfully kept after her termination. In reality, as Plaintiff is well aware, Defendants never received any such documents or information from Moore. Moore, along with others who reported or otherwise knew of the alleged fraud related to Rolvedon (the "Spectrum Whistleblowers"), communicated and shared information only with Blank Rome.

While Plaintiff claims in its Motion that Defendants possess allegedly confidential documents and information, Plaintiff has not identified the nature of the allegedly confidential or privileged information beyond broadly asserting that anything in Moore's possession would be confidential and protected from disclosure. But Moore never gave any non-public, confidential, or privileged material to Defendants; Plaintiff's entire Motion is premised on a falsehood.

The injunctive relief sought in the Motion—which is so expansive and onerous as to include "[e]njoining Defendants and their agents, including attorneys…from directly or indirectly using" material possessed by Moore and the Spectrum Whistleblowers "*and any information derived therefrom, in whatever form*" (emphasis added), and requiring Defendants to identify and describe all such documents and information (*see generally* Pl.'s Application for TRO and Prelim. Injunction, Dkt. No. 2)—is an excessive measure that will harm Defendants, the Spectrum Whistleblowers, and the public far more than it will benefit Plaintiff, and Plaintiff has utterly failed to demonstrate its entitlement to that relief. Respectfully, for the reasons explained herein, this Court should deny the Motion.

## RELEVANT FACTS

BHG is a New York City-based investment management firm that became an Assertio shareholder in 2024. (Parker Decl. at ¶¶ 4 – 5.) Parker is the Senior Managing Director and Chief Executive Officer of BHG. (*Id*. at ¶ 3.) Spectrum is a pharmaceutical company that develops drugs for cancer patients, though its only marketed product is Rolvedon. (Patel Decl. in Supp. of Pl.'s Mot. at ¶¶ 5 – 6.)

In 2023, Spectrum was acquired by Assertio, a NASDAQ-listed Delaware corporation. (Parker Decl. at ¶¶ 5 – 6.) The acquisition resulted in massive shareholder dilution, far more than what was anticipated based on Assertio's public filings, because after the acquisition Assertio publicly admitted to having overvalued Rolvedon by seventy-five percent (75%) (though Assertio failed to explain why it had done so). (*Id*. at ¶¶ 7 – 8.) BHG sent a letter to Assertio's board of directors on April 22, 2024, expressing its concerns about the inadequate disclosures surrounding the acquisition and listing a number of questions about the transaction and Assertio's due diligence prior to (the "April Letter"). (*Id*. at 9.)

Assertio's Audit Committee Chairman and Chief Financial Officer met with Parker on May

7, 2024, but refused to elaborate beyond what was stated in Assertio's deficient filings. (*Id*. at ¶¶ 10 – 11.) BHG then sent Assertio another letter in May reiterating its disclosure and due diligence concerns, to which Assertio did not respond. (*Id*. at ¶ 12.) BHG then issued two press releases, one reiterating the concerns articulated in the April Letter and the other publishing a report from a CPA and Certified Fraud Examiner whom BHG had retained to independently review Assertio's public filings. (*Id*. at ¶ 13.)

After the press releases were published, BHG was contacted by Moore. In discussions with Parker, upon Parker's request, Moore shared *only* publicly available information about her internal whistleblowing regarding clinical data fraud leading up to Rolvedon's FDA approval. (*Id*. at ¶¶ 14 – 16.) Moore told Parker that Spectrum had purged "adverse events" from its clinical trial databases, including data showing that some clinical study subjects had actually developed pre-cancerous cells as a result of using Rolvedon. (*Id*. at ¶ 15.)

Being contacted by Moore—and, subsequently, other Spectrum Whistleblowers—prompted BHG to hire Blank Rome to conduct an independent investigation into Assertio's acquisition of Spectrum and the Rolvedon fraud allegations. (*Id*. at ¶¶ 17 – 18.) Over the course of the investigation, Defendants actively took steps to avoid being privy to any confidential or privileged information. Parker's desire to silo himself and BHG from the information shared by Moore and the Spectrum Whistleblowers to the attorneys was repeatedly communicated to Moore, the Spectrum Whistleblowers, Blank Rome, and Schulte Roth & Zabel ("Schulte"), the law firm that later replaced Blank Rome as outside counsel for BHG regarding Assertio/Spectrum. (*Id*. at ¶¶ 18, 20, 25.)

BHG continued to correspond with Assertio regarding BHG's initial concerns about Assertio's public disclosures and due diligence failures with respect to the Spectrum acquisition and Rolvedon, at one point making a shareholder books and records demand. (*Id*. at ¶¶ 19 – 23.) BHG

also informed Assertio of the Blank Rome investigation and advised Assertio that BHG had been contacted by Moore and the Spectrum Whistleblowers. (*Id*. at ¶¶ 19 – 21.) In its communications to Assertio, BHG repeatedly stated that its concerns were premised on publicly available information, including lawsuits and legal filings involving Spectrum and Moore. (*Id*. at ¶¶ 9, 10, 12, 19, 21 – 23.) Though Plaintiff has accused Defendants of possessing confidential or privileged documents and information unlawfully given to them by Moore, BHG's letters cite (and even link to) only public documents and information, and inform Assertio/Spectrum that Defendants' contact with Moore and the Spectrum Whistleblowers was limited to telling them to speak to Blank Rome. (*Id*.)

In November of 2024, Defendants received two photographs from BHG's outside counsel, Schulte: (i) a photograph of an email sent by a former Spectrum employee indicating that the employee had been asked to delete or manipulate Rolvedon clinical data; and (ii) photographs of pages of a printed-out site audit report detailing various serious "deficiencies" with Spectrum's Rolvedon clinical trials (collectively, the "Photographs"). (*Id*. at ¶¶ 24, 25.) Defendants, believing the Photographs not to be privileged or confidential because of Defendants' repeated representations that they did not want to receive any such information, published links to the Photographs in a press release and on the BHG website. (*Id*. at ¶ 25.) Defendants did not receive the Photographs from Moore. (*Id*.) Defendants do not know who provided the Photographs to BHG's outside counsel. (*Id*.)

## **ARGUMENT**

The standard for granting a TRO is identical to the standard for granting a preliminary injunction. *Ameritech v. Voices for Choices, Inc.*, 2003 U.S. Dist. LEXIS 8023, at *2 (N.D. Ill. May 9, 2003). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *United African Org. v. Biden*, 620 F. Supp.

3d 756, 765 (N.D. Ill. 2022) (*citing Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (U.S. 2008)); *see also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (a "preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it") (*quoting Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)).

To prevail on a motion for a preliminary injunction, the moving party must show: (i) that it has a reasonable likelihood of success on the merits of its claim(s); (ii) that no adequate remedy at law exists; (iii) that it will suffer irreparable harm if the preliminary injunction is denied; (iv) that such irreparable harm outweighs the irreparable harm the non-moving party will suffer if the preliminary injunction is granted; *and* (v) that the injunction will not harm the public interest. *O'Connor v. Board of Education*, 645 F.2d 578, 580 (7th Cir. 1981) (internal citation omitted). If the movant fails to show likelihood of success on the merits or irreparable harm, "the court need go no further in denying the preliminary injunction." *O'Connor*, 645 F.2d at 580 (*citing Kolz v. Board of Ed. of City of Chicago*, 576 F.2d 747 (7th Cir. 1978)). As detailed below, Plaintiff has not met this standard.

**A. <u>Spectrum Will Not Prevail on the Merits of Its Claims.</u>**

**1. Moore did not breach her fiduciary duties to Spectrum because she did not provide confidential or privileged material to Defendants.**

Plaintiff has sued Moore for breaching her fiduciary duties to Spectrum by allegedly sharing privileged and confidential information with Defendants. (*See* Compl., Dkt. No. 1, at ¶¶ 46 – 55.) But because Defendants never received any such information from Moore, Plaintiff cannot possibly prevail on this cause of action.

Other than pointing to BHG's identification of Moore and the Spectrum Whistleblowers in some of its correspondence to Assertio—correspondence in which BHG also clearly states that all the information in its possession, including all information from Moore, is entirely public—Plaintiff has provided no evidence that Moore gave confidential or privileged information to Defendants.

(*See generally* Motion.) While Plaintiff claims "BHG's source of information was Moore" (Pl.'s Mem. of Law in Supp. of Motion, Dkt. No. 3, at 7)[1], Parker's testimony in support of Defendants' instant opposition clearly demonstrates that Defendants neither asked for nor obtained any non-public information from Moore. (Parker Decl. at ¶ 25.) Plaintiff has therefore failed to demonstrate a likelihood of success on the merits of its breach of fiduciary duty cause of action against Moore.

**2. Moore did not breach her alleged contractual confidentiality obligations to Spectrum because she did not provide confidential or privileged material to Defendants.**

Plaintiff also sued Moore for breach of contract, alleging that Moore was contractually obligated not to provide Spectrum's confidential information to Defendants. (*See* Compl., Dkt. No. 1, at ¶¶ 56 – 67.) Again, because Defendants never received any such information from Moore, Plaintiff cannot prevail on this cause of action.

**3. Defendants did not aid and abet any breach by Moore of her fiduciary duties to Spectrum because they did not receive, or instruct Moore to share, any confidential or privileged material from Moore.**

Plaintiff claims that Defendants aided and abetted Moore's aforementioned alleged breach of fiduciary duty by "inducing her to…disclose Spectrum's confidential, proprietary, and privileged information" to Defendants and "third parties". (*Id*. at ¶¶ 68 – 76.) But Plaintiff is unlikely to prevail on this cause on action because: (i) it is unlikely to prevail on its underlying breach of fiduciary duty claim against Moore; and (ii) Defendants only ever sought to receive from Moore (and only did receive from Moore) information that was already publicly available.

A plaintiff must prove the following four elements to establish aiding and abetting breach of fiduciary duty: (i) the existence of a fiduciary relationship; (ii) a breach of the fiduciary's duty;

[1] In support of this assertion, Plaintiff cites to two letters from BHG to Assertio—one dated July 1, 2024 (the "July 1 Letter") and one dated August 20, 2024 (the "August 20 Letter"). The only mention of Moore in the July 1 Letter is the following statement: "[I]t is apparent the [Assertio] Board has not yet taken appropriate action in response to the matters raised by whistleblowers (such as the litigation between Spectrum and Kellie Moore related, in part, to clinical design problems and inaccurate reporting to the FDA and EMA, not to mention study subjects)." (*See* Dkt. No. 3-13 at 3.) The August 20 Letter identifies Moore "and her fellow whistleblowers" as individuals with potential legal claims against Assertio/Spectrum and relevant information about the Rolvedon clinical data fraud. (*See* Dkt. No. 3-14 at 4, 9.)

(iii) knowing participation in that breach by the defendant; and (iv) damages proximately caused by the breach. *Overwell Harvest, Ltd. v. Trading Techs. Int'l, Inc.*, 114 F.4th 852, 862 (7th Cir. 2024) (internal citations omitted). "Knowing participation requires both knowledge that the fiduciary is breaching a duty *and* culpable participation by the aider and abettor." *Id.* (internal citations omitted) (emphasis added). "To properly allege that a defendant is liable for aiding and abetting a breach of fiduciary duty, a plaintiff should also allege facts to show the defendant 'kn[ew] that the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other so to conduct himself.'" *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (*citing* Restatement (Second) of Torts §876(b)).

As noted *supra*, Plaintiff's breach of fiduciary duty claim against Moore is undermined by the fact that Moore never provided privileged or confidential documents or information to Defendants. But even if Moore somehow did breach her fiduciary duty to Spectrum, Defendants lacked the requisite intent to aid and abet any such breach. Parker did not know that Moore was breaching a fiduciary duty owed to Spectrum because he understood the information she shared with him to be entirely public. (Parker Decl. at ¶ 16.) Defendants' instructions to Moore to communicate directly with Blank Rome, BHG's outside counsel, was clearly not intended to cause Moore to breach any fiduciary duty; Defendants instructed all of the Spectrum Whistleblowers to communicate with counsel, both in furtherance of Blank Rome's independent investigation into Spectrum and the allegations of fraud, and to ensure Defendants were appropriately siloed from any information BHG would not otherwise be privy to as an Assertio shareholder. (*Id.* at ¶¶ 16, 21.)

**4. Defendants did not tortiously interfere with any agreement between Spectrum and Moore because Defendants were not aware of any such agreement and did not direct Moore to give Spectrum's information to third parties.**

Plaintiff claims that Defendants tortiously interfered with the employment agreement between Moore and Spectrum by "directing [Moore] to disclose the Confidential Information in her

possession," "inducing her attempts to use the Confidential Information for her own personal gain," and "inducing her failure to return Spectrum's Confidential Information." (Compl., Dkt. No. 1, at ¶¶ 77 – 87.) Plaintiff is unlikely to prevail on this cause of action for a number of reasons, including: (i) Defendants' lack of knowledge of any agreement between Moore and Spectrum, let alone the terms thereof; (ii) Defendants' demonstrated desire not to obtain any confidential or privileged material from Moore; and (iii) the fact that Moore was fired by Spectrum in 2019 (making it hard to believe that any failure on Moore's part to return material to Spectrum was induced by Defendants in 2024).

To succeed on a cause of action for tortious interference with a contractual relationship, a plaintiff must show: (i) that it had a valid business relationship or a reasonable expectation of entering into a valid business relationship; (ii) that the defendant had knowledge of that relationship or expectancy; (iii) that the defendant intentionally interfered with that relationship or expectancy by inducing or causing a breach or termination thereof; and (iv) that the plaintiff suffered damages as a result of the intentional interference. *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, 2024 U.S. Dist. LEXIS 113461, at *5 (N.D. Ill. June 27, 2024) (*citing Aspen Mktg. Servs. v. Russell*, 2009 U.S. Dist. LEXIS 112982, at *21 (N.D. Ill. Dec. 3, 2009)).

Defendants were unaware of any confidentiality agreement between Moore and Spectrum; though Plaintiff indicates that it made Defendants aware of such an agreement in an August 27, 2024 letter to Defendants, the letter simply states that "any Spectrum documents Ms. Moore retained from Spectrum are…pursuant to a confidentiality agreement". (Pl.'s Mem. of Law in Supp. of Mot., Dkt. No. 3, at 9; Pl.'s Ex. 13, Dkt. No. 3-15, at 4 – 5.) But even if Defendants were aware of this agreement, they never sought or obtained any confidential documents from Moore and therefore did not have the requisite intent enabling them to be found liable for intentionally interfering with the agreement. *Plaintiff knows this*; Defendants' refusal to engage with Moore with respect to any

information that was not already public is memorialized repeatedly in BHG's letters to Plaintiff.

Plaintiff speculates in its Motion that "Parker obtained confidential documents from Moore so that he could post them on BHG's website" (Pl.'s Mem. of Law in Supp., Dkt No. 3, at 10), but fails to cite to any evidence to support this conclusory statement. (*See generally id*.) The only two documents that were made publicly available on BHG's website, the Photographs, were sent to Defendants by BHG's outside counsel, not Moore, and the source(s) of the Photographs remain(s) unknown to Defendants. (Parker Decl. at ¶ 25.)

Lastly, if Moore failed to return confidential material to Spectrum, it was not because of Defendants. Moore was fired approximately five years before she first contacted Defendants and informed Parker that she had blown the whistle internally on fraud related to Rolvedon clinical data.

Thus, Plaintiff has not established a likelihood of success on the merits with respect to its tortious interference cause of action against Defendants.

**5. BHG/Parker did not violate the federal Computer Fraud and Abuse Act.**

Plaintiff claims that Defendants violated the Computer Fraud and Abuse Act by "transmit[ing] in interstate commerce emails and letters that contained threats to obtain information from Moore and the Spectrum laptop without authorization and to impair the confidentiality of the information contained on the Spectrum laptop without authorization." (Compl., Dkt. No. 1, at ¶¶ 88 – 97.) As with Plaintiff's other causes of action against Defendants, this one is undermined by the fact that Defendants never obtained any non-public, privileged, or confidential information from Moore, let alone specifically from her Spectrum laptop.

Plaintiff broadly and vaguely claims that Defendants sent correspondence to Assertio and Spectrum "containing threats to obtain confidential information from Moore and her laptop" (Pl.'s Mem. of Law in Supp. at 12), but such statements are conflations and misrepresentations of months of correspondence between BHG and Assertio about a number of issues and suggested courses of

action. Defendants believe Plaintiff is referencing a letter from BHG to Assertio dated August 20, 2024 (Ex. 12 to Pl.'s Mem. of Law in Supp., Dkt. No. 3-14), wherein BHG explains to Assertio the benefits of a potential False Claims Act action against Spectrum. BHG notes in this correspondence that it believes Moore would be willing to "shar[e] her extensive trove of (Spectrum-related fraud) evidence (all of which, apart from public documents, BHG has declined to view, but has directed the whistleblowers to share with BHG's legal counsel for safekeeping) with Assertio" in furtherance of legal action against Spectrum. (*Id*. at 4.) At no point does this correspondence mention BHG's receipt of material from Moore's laptop or the public disclosure of any material in Moore's possession.

Plaintiff has failed to demonstrate a likelihood of success on the merits of its Computer Fraud and Abuse Act claim against Defendants.

**B. Spectrum Will Not Suffer Irreparable Harm if the Court Denies Injunctive Relief.**

Irreparable harm is harm "for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (*citing Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Here, Plaintiff fails to clearly show it is entitled to the injunctive relief it requests; in fact, it even admits that it is seeking such relief merely on the basis of "likely" harm to Rolvedon sales "and the good will associated with Rolvedon". (Patel Decl. at 11.) Plaintiff has thus failed to "make a threshold showing of injury to goodwill by submitting some evidence that raises its claim to loss of goodwill above mere speculation." *Am. Guardian Warranty Servs. v. JCR-Wesley Chapel, LLC*, 2017 U.S. Dist. LEXIS 77100, at *33 (N.D. Ill. 2017) (*citing Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994)) (internal citations omitted); *see also E. St.*

*Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005) (holding that a plaintiff may not "obtain a preliminary injunction by speculating about hypothetical future injuries").

While Plaintiff also notes that it "has incurred and continues to incur costs" associated with responding to Defendants (*id*. at 11), this could be remedied by monetary damages. Plaintiff has not articulated any concrete irreparable harm that would be appropriately addressed by this Court's grant of an injunction against Defendants.

Further, Plaintiff has relied on inapplicable case law with respect to its irreparable harm argument—specifically, on case law which purports to establish a "*presumption* of irreparable harm to the plaintiff in cases of *trade secret misappropriation*." (*See* Pl.'s Mem. of Law in Supp. at 12 – 13 (citing *Nucap Indus. Inc. v. Robert Bosch LLC*, 2016 U.S. Dist. LEXIS 206035 (N.D. Ill. Aug. 29, 2016) (emphasis added)). Plaintiff similarly relies on *3M v. Pribyl*, 259 F.3d 587 (7th Cir. 2001) and *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1334–35 (N.D. Ill. 1990), which concern the disclosure of trade secrets. (*Id*.) Plaintiff has not alleged that any of the allegedly confidential information at issue here constitutes trade secrets (beyond conclusory statements that any material in Moore's possession is likely to contain "proprietary" information) and is therefore not entitled to rely on any favorable presumption of irreparable harm on that basis.

In sum, with respect to the irreparable harm prong of the standard for a TRO or preliminary injunction, Plaintiff's assertions that Defendants' actions may negatively impact Rolvedon sales and goodwill are mere speculation about hypothetical future injuries. Plaintiff has failed to establish that any harm actually occurred as a result of Defendants' allegedly wrongful conduct. Absent the inapplicable presumption of irreparable harm Plaintiff seeks to establish through trade secret case law, this Court must follow the standard set forth in *Winter*—a standard Plaintiff has not met.

**C. Plaintiffs Would Have an Adequate Remedy at Law.**

"[A] plaintiff's 'ability to quantify damages' indicates that the plaintiff will not suffer irreparable harm for which there is no adequate remedy at law, because money damages would be a sufficient 'make whole' remedy at the case's end." *H-D, U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2021 U.S. Dist. LEXIS 187253 (N.D. Ill. Sept. 24, 2021) (*citing Kinney v. Chicago & N.E. Ill. Dist. Council United Bros. of Carpenters*, 825 F. Supp. 843, 850 (N.D. Ill. 1993)). Though Plaintiff claims that it would not be able to quantify its damages, based on the only non-speculative harm alleged—costs and fees associated with this litigation and Spectrum's response to Defendants over the course of this year—damages would be very easily quantified. Plaintiff also claims, without evidentiary support, that "there is a very real likelihood that Defendants…will be insolvent," meaning that Plaintiff could not obtain damages from Defendant. (Pl.'s Mem. of Law in Supp., Dkt. No. 3, at 14.) Respectfully, the Court should disregard such conjecture.

Because monetary damages would appropriately redress the harm alleged by Plaintiff, Plaintiff cannot credibly demonstrate that it has no adequate remedy at law.

**D. The Balance of Harms and Public Interest Considerations favor Defendants.**

Federal courts in this Circuit use a "sliding scale" approach when balancing the harms against the parties in analyzing whether injunctive relief is appropriate, and this balancing "should also encompass any effects that granting or denying the preliminary injunction would have on … the public interest." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (*citing Roland*, 749 F.2d at 387-88.) In short, a Court will not grant a preliminary injunction if doing so would disserve the public interest. *O'Connor v. Board of Education*, 645 F.2d 578, 580 (7th Cir. 1981).

Plaintiff argues that "the public interest is well-served by enforcing valid agreements and

protecting trade secrets". (Pl.'s Mem. of Law in Supp., Dkt. No. 3, at 15.) However, Defendants' and the public's interests in Defendants not being subjected to a sweeping and legally baseless injunction far outweigh the interests articulated by Plaintiff (which would not be served by the injunction, because Moore did not violate her confidentiality agreement with Spectrum—she did not share any confidential information with Defendants—and trade secrets are not at issue in this litigation). *See, e.g.*, *Huawei Techs. Co., Ltd. v. Motorola, Inc.*, 2011 U.S. Dist. LEXIS 17165, at *31 – 32 (N.D. Ill. Feb. 22, 2011) (providing that "the balance of hardships" analysis is affected by whether the harm alleged is concrete versus speculative, and whether the causes of any alleged concrete harm are identifiable).

Meanwhile, the harm that would result from enjoining Defendants would impact the public at large, the investing public, and the Spectrum Whistleblowers. Defendants acted within BHG's capacity—and used the toolkit available to BHG—as a shareholder of a public company. (Parker Decl. at ¶¶ 27 – 29.) When BHG was contacted by Moore and Defendants were made aware of the existence of multiple Spectrum Whistleblowers, Defendants hired a law firm to investigate not only the due diligence and disclosure inadequacies that were apparent on the face of public filings related to the Spectrum acquisition, but also the allegations of fraud related to Rolvedon clinical data (and, in particular, the deletion of "adverse events," including the increase of pre-cancerous cells in some clinical trial subjects). (*Id*. at ¶¶ 15, 17.) Defendants notified Assertio/Spectrum about the investigation and the fraud allegations and remained completely siloed from any confidential or privileged material that was shared to Blank Rome and Schulte over the course of the investigation. (*Id*. at ¶¶ 17, 19, 21, 22.) Now that a shareholder, BHG, has an independent report from outside counsel analyzing Assertio/Spectrum's liability for the Rolvedon clinical data fraud, Plaintiff wants to prevent BHG "from directly or indirectly using" that information in any way. (*See* Pl.'s Application for TRO and Prelim. Injunction, Dkt. No. 2, at 1.)

By design, the injunction requested by Plaintiff defines "Confidential Spectrum Materials" so broadly as to encompass the Blank Rome independent investigative report. (*Id.*) (Defendants have no other material in their possession that would be subject to the injunction.) Any disclosures regarding the report would risk identifying to Spectrum the Spectrum Whistleblowers and certain material in their (and Schulte's) possession, severely compromising not only their ability to pursue or defend potential claims involving Spectrum, but any government or regulatory investigations or inquiries that may arise out of their fraud allegations.

Accordingly, this Court should deny Plaintiff's request for injunctive relief because the harm to Defendants, the Spectrum Whistleblowers, and the public far outweighs the harm to the Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Dated: December 30, 2024

**LUCOSKY BROOKMAN LLP**

*/s/ Evan Gotlob*
Evan Gotlob *(admitted pro hac vice)*
101 Wood Avenue South
Woodbridge, New Jersey 08830
(732) 395-4520
egotlob@lucbro.com

*/s/ Samuel Blatnick*
Samuel Blatnick
7300 W 110th St., Suite 700
Overland Park, Kansas 66210
(913) 392-8505
sblatnick@lucbro.com

*/s/ Anne Melton*
Anne Melton *(pro hac vice application forthcoming)*
111 Broadway, Suite 807
New York, NY 10006
(732) 395-4409
amelton@lucbro.com

***ATTORNEYS FOR DEFENDANTS THE BUXTON HELMSLEY GROUP, INC. AND ALEXANDER ERWIN PARKER***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically filed this 30th day of December 2024 and served to all counsel of record via email through the Court's electronic filing system.

Dated: December 30, 2024

*/s/ Evan Gotlob*
Evan Gotlob