**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPECTRUM PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE BUXTON HELMSLEY GROUP, INC., ALEXANDER ERWIN PARKER, and KELLIE ANN MOORE,<br><br>Defendants. | Case No.: 1:24-cv-12489<br><br>Hon. LaShonda A. Hunt |
| THE BUXTON HELMSLEY GROUP, INC., and ALEXANDER ERWIN PARKER,<br><br>Counterclaim and Third-Party Plaintiffs,<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC.,<br><br>Counterclaim Defendant,<br><br>and<br><br>ASSERTIO HOLDINGS, INC., and BRENDAN P. O'GRADY,<br><br>Third-Party Defendants. | |

**THE BUXTON HELMSLEY GROUP, INC. AND ALEXANDER ERWIN PARKER'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED RULE 59(e) MOTION TO ALTER OR AMEND PRELIMINARY INJUNCTION ORDER**

**TABLE OF CONTENTS**

**Page**


INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................3

LEGAL STANDARD..................................................................................................5

ARGUMENT ...........................................................................................................6

I. THE ORDER SHOULD BE AMENDED TO CLARIFY THAT THE INJUNCTIVE RELIEF GRANTED IS TETHERED TO SPECTRUM'S CLAIMS AND THE COURT'S FINDINGS ABOUT THEM ..........................................6

II. THE ORDER SHOULD BE AMENDED TO MAKE ITS PROHIBITIONS SUFFICIENTLY CLEAR ...........................................................................................8

III. THE ORDER SHOULD BE AMENDED TO CLARIFY THAT IT COMPORTS WITH THE FIRST AMENDMENT ...................................................................10

CONCLUSION.........................................................................................................11

## TABLE OF AUTHORITIES

**Page**

### Cases

*Alabama v. U.S. Army Corps of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) ....................6

*American Can Co. v. Mansukhani*,
742 F.2d 314 (1984)....................8

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F.3d 624 (7th Cir. 2003) ....................8

*Commodity Futures Trading Comm'n v. Battoo*,
790 F.3d 748 (7th Cir. 2015) ....................6

*Common Cause Indiana v. Lawson*,
978 F.3d 1036 (7th Cir. 2020) ....................6

*Consumer Fin. Protection Bureau v. Consumer First Legal Group, LLC*,
6 F.4th 694 (7th Cir. 2021) ....................7

*De Beers Consol. Mines v. United States*,
325 U.S. 212 (1945)....................7

*Fin. Servs. Corp. of Midwest v. Weindruch*,
764 F.2d 197 (7th Cir. 1985) ....................5

*Frye v. Hughes*,
No. 24-CV-2514, 2025 WL 1191033 (S.D. Ill. Apr. 24, 2025)....................7

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999)....................7

*Henderson v. Box*,
947 F.3d 482 (7th Cir. 2020) ....................6

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*,
389 U.S. 64 (1967)....................9, 10

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)....................11

*McCarthy v. Fuller*,
810 F.3d 456 (7th Cir. 2015) ....................7

*Nw. Pallet Supply Co. v. Peco Pallet, Inc.*,
No. 3:15-CV-50182, 2016 WL 8671902 (N.D. Ill. May 13, 2016).......................................6, 7

*PMC, Inc. v. Sherwin-Williams Co.*,
151 F.3d 610 (7th Cir. 1998) ..........................................................................................9, 10

*PrimeSource Bldg. Prods., Inc. v. Felten*,
No. 16-CV-11468, 2018 WL 10425921 (N.D. Ill. Mar. 8, 2018).............................................5

*Russell v. Delco Remy Div. of Gen. Motors Corp.*,
51 F.3d 746 (7th Cir. 1995) ....................................................................................................6

*Salazar v. Buono*,
559 U.S. 700 (2010)................................................................................................................6

*Schmidt v. Lessard*,
414 U.S. 473 (1974)................................................................................................................9

*Su v. Fensler*,
No. 22-CV-01030, 2023 WL 8446380 (N.D. Ill. Nov. 28, 2023) ............................................5

*Tory v. Cochran*,
544 U.S. 734 (2005)..............................................................................................................11

**Rules**

Fed. R. Civ. P. 59..............................................................................................................1, 5

Fed. R. Civ. P. 65..............................................................................................................8, 9

## INTRODUCTION

The Buxton Helmsley Group, Inc. ("BHG") and Alexander Erwin Parker ("Parker") (together, "BHG/Parker") respectfully move this Court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the June 5, 2025 Preliminary Injunction Order (Dkt. No. 96, the "Order") to clarify that the injunction is limited to prohibiting public disclosure by BHG/Parker of the confidential information Plaintiff alleges in this case was unlawfully disclosed in breach of a legal duty—*i.e.,* confidential Spectrum information allegedly disclosed by Kellie Ann Moore in breach of a fiduciary duty and/or contract and/or allegedly obtained from Ms. Moore's work laptop in violation of the Computer Fraud and Abuse Act ("CFAA") (the "Moore Information"). Were the preliminary injunction to prohibit more than that—specifically, were it to prohibit using such Moore Information non-publicly, or were it to include disclosure (or use) of information and documents unconnected to Moore—the injunction could not stand. It would (i) be insufficiently connected to Plaintiff's claims for which the Court found a reasonable likelihood of success on the merits (and the Court's attendant findings on irreparable harm); (ii) fail to apprise BHG/Parker sufficiently of what conduct is prohibited, and (iii) be an improper restriction on BHG/Parker's speech insufficiently tailored to the needs of the case, in violation of the First Amendment.

In support of its motion for a preliminary injunction, Spectrum argued it was "merely request[ing] that the Court enter an order restraining Defendants from further disclosing Spectrum's confidential documents and information in violation of its rights while this lawsuit is pending." Dkt. No. 3 at 15. Paragraph 1 of the preliminary injunction, however, largely adopted Spectrum's proposed order, which could be construed to restrain significantly more. It states:

> Defendants, and their agents, including attorneys and anyone acting on their behalf or subject to their direction or control, are enjoined from directly or indirectly ***using***, disclosing, or publishing Spectrum's confidential and proprietary documents, information, and trade secrets, ***including but not limited to*** any Spectrum documents that were on the Spectrum laptop Moore retained following

> her termination from Spectrum, any other Spectrum internal documents or materials Moore possesses or retained following her termination from Spectrum, and any information derived therefrom, in whatever form (the "Confidential Spectrum Materials").

Order at 10–11 (emphasis added).

The Court granted the preliminary injunction based on its finding that Spectrum had demonstrated a reasonable likelihood of success on the merits for claims grounded in disclosure of confidential information ***by Kellie Ann Moore in alleged violation of legal duties***. Order at 5–11. Spectrum has not even claimed, let alone demonstrated a likelihood of success in proving, that any documents or information other than the Moore Information have been or will be improperly disclosed in violation of a legal duty. Moreover, the Court found that irreparable harm would result only by Defendants' "***publicly releasing*** further confidential information." *Id.* at 10 (emphasis added). An injunction that prohibits conduct and speech concerning Spectrum information *not* disclosed in alleged violation of a legal duty by Ms. Moore, and/or which prohibits use of Moore Information that does *not* result in public disclosure, could not stand, therefore, as it would grant relief wholly unconnected to Spectrum's claims and the Court's legal bases for issuing the injunction. And it would violate the First Amendment's mandate that injunctions restricting speech be narrowly tailored to the needs of the case and objectives of the injunction.

Further, the inclusion (in Paragraph 1) of a prohibition on directly or indirectly "***using***" the subject information, and the inclusion of "confidential and proprietary documents, information, and trade secrets, ***including but not limited to*** . . ." the Moore Information, renders it impossible to ascertain the contours of the injunction's prohibitions. Order at 10 (emphasis added). No common sense reading of the Order could prohibit all non-public "use" of the Moore Information. Indeed, BHG/Parker could not comply with Paragraph 3 without persons "acting on their behalf" "using" the Moore Information to make a list of it. *See id.* at 11. That only underscores the

injunction's ambiguity as to what type of non-public "use," if any, would run afoul of the order. Further, while the contours of the Moore Information can be reasonably ascertained, BHG/Parker "and anyone acting on their behalf or subject to their direction or control," *id.* at 10, cannot reasonably ascertain whether every other piece of information about Spectrum they might encounter is confidential or proprietary information disclosed in alleged violation of a legal duty.

BHG/Parker thus proposes that Paragraph 1 of the injunction be amended to reflect more precisely what BHG/Parker understands to be the intent of the Order, as follows:

> Defendants, and their agents, including attorneys and anyone acting on their behalf or subject to their direction or control, are enjoined from directly or indirectly ~~using,~~ disclosing~~,~~ or publishing Spectrum's confidential and proprietary documents, information, and trade secrets~~, including but not limited to any Spectrum documents~~ that were on the Spectrum laptop Moore retained following her termination from Spectrum, any other Spectrum internal documents or materials Moore possesses or retained following her termination from Spectrum, and any information derived therefrom, in whatever form (the "Confidential Spectrum Materials").

Because Paragraph 2 of the injunction could be construed as prohibiting disclosure of undisputedly public Spectrum materials that may have been received from Ms. Moore, BHG/Parker further proposes the following clarification of Paragraph 2:

> All confidential Spectrum-related documents or information BHG and/or Parker received directly or indirectly from Moore are Confidential Spectrum Materials subject to this Order.

## BACKGROUND

On December 5, 2024, Spectrum, a pharmaceutical company that developed, manufactures, and sells the FDA-approved cancer drug Rolvedon, filed its Complaint against BHG/Parker and Kellie Ann Moore. Dkt. No. 1, Compl. at 23. Spectrum's Complaint sought relief for past disclosure of purportedly confidential Spectrum information shared by Ms. Moore in alleged violation of a legal duty, and to prevent Defendants from publicly disclosing such information in the future. Specifically, Spectrum asserted claims against Ms. Moore for breach of fiduciary duties

she owed as Spectrum's former in-house counsel and for breach of confidentiality provisions of her employment agreement; against BHG/Parker for aiding and abetting both alleged breaches; and against Ms. Moore and BHG/Parker for violating the Computer Fraud and Abuse Act ("CFAA") in connection with alleged unauthorized access of material on Ms. Moore's Spectrum laptop. Compl. at 15–20. None of the allegations in Spectrum's Complaint relate to Spectrum documents or information outside of what Ms. Moore shared purportedly in violation of her contractual and fiduciary duties and the CFAA. In other words, only documents and information originating with Ms. Moore are the subject of Spectrum's claims.

In its Complaint, Spectrum sought: "A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and all persons under Defendants' control from ***publishing, posting, sharing, or otherwise making publicly available*** Spectrum's confidential information and property . . . ." *Id.* at 22 (emphasis added). Nowhere does the Complaint indicate that the injunctive relief sought includes any direct or indirect use of any of Ms. Moore's information or documents, nor does it indicate that any documents or information beyond that originating with Ms. Moore are at issue in this case. *See id.*

On the same day as it filed its Complaint, Spectrum filed its Application for a Temporary Restraining Order and Preliminary Injunction. Dkt. No. 2 (the "Application"). Spectrum's memorandum in support of the Application (Dkt. No. 3, the "Memo. ISO TRO/PI") identified the following, consistent with the scope of relief requested in Spectrum's Complaint: "Spectrum ***merely*** requests that the Court enter an order restraining Defendants from ***further disclosing*** Spectrum's confidential documents and information in violation of its rights while this lawsuit is pending." Dkt. No. 3 at 15 (emphasis added). Nonetheless, Spectrum submitted with its Application a Proposed Order that went further than the requests within its Complaint and

Memorandum: the Proposed Order included a prohibition on "directly or indirectly using" the subject information, and encompassed Spectrum "confidential and proprietary documents, information, and trade secrets, ***including but not limited to*** . . ." the Moore Information. Dkt. No. 2-1 at 2 (emphasis added).

BHG/Parker filed their opposition to the Application on December 30, 2024. Dkt. No. 31. A hearing was held on the Application on February 27, 2025. Dkt. No. 60. The Court issued its Preliminary Injunction Order on June 5, 2025, finding a reasonable likelihood of success on the merits of Spectrum's contract, fiduciary duty, and CFAA claims ***concerning the Moore Information*** and a sufficiently clear showing of irreparable harm. Order at 6–10. The Court further found that irreparable harm would result from BHG/Parker's "***publicly releasing*** further confidential information" (Order at 10 (emphasis added)), and accordingly issued a preliminary injunction. *Id.* The Court adopted the language Spectrum suggested in its Proposed Order, enjoining Defendants from "directly or indirectly using, disclosing, or publishing Spectrum's confidential and proprietary documents," regardless of whether Ms. Moore was the source of such documents or information. *Id.*

## LEGAL STANDARD

A motion to alter or amend a preliminary injunction order filed within 28 days of the order is governed by Rule 59(e). *PrimeSource Bldg. Prods., Inc. v. Felten*, No. 16-CV-11468, 2018 WL 10425921, at *2 (N.D. Ill. Mar. 8, 2018) (citing Fed. R. Civ. P. 59(e) and *Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985)). "Such a motion 'performs a valuable function where the Court . . . has made a decision outside the adversarial issues presented to the Court by the parties," and/or where another "manifest error of law" should be corrected. *Id.* Even absent error, a court may modify the terms of a preliminary injunction if it concludes that doing so would be "beneficial to the parties and the public interest." *Su v. Fensler*, No. 22-CV-01030, 2023

WL 8446380, at *4 n.4 (N.D. Ill. Nov. 28, 2023) (finding no error of law in preliminary injunction provisions but modifying their terms because "it would be beneficial to the parties and the public interest to enter a modest change to the terms of the PI Order"); *see also Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015) ("We do not doubt . . . that a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest."). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

## ARGUMENT

### I. THE ORDER SHOULD BE AMENDED TO CLARIFY THAT THE INJUNCTIVE RELIEF GRANTED IS TETHERED TO SPECTRUM'S CLAIMS AND THE COURT'S FINDINGS ABOUT THEM

The Order should be amended to clarify that it does not improperly prohibit conduct and speech that is untethered to Spectrum's claims and/or to the Court's findings as to the likelihood of success on the merits and irreparable harm.

"An injunction 'must not be broader than the legal justification for its entry.'" *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1041 (7th Cir. 2020) (quoting *Henderson v. Box*, 947 F.3d 482, 487 (7th Cir. 2020)); *see also Salazar v. Buono*, 559 U.S. 700, 718 (2010) ("A court must find prospective relief that fits the remedy to the wrong or injury that has been established."). "[A]n injunction in the traditional sense must be an order that gives some or all of the substantive relief sought in the complaint." *Nw. Pallet Supply Co. v. Peco Pallet, Inc.*, No. 3:15-CV-50182, 2016 WL 8671902, at *3 (N.D. Ill. May 13, 2016) (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005)). "The Supreme Court has explained that a preliminary injunction is 'appropriate to grant intermediate relief of the same character as that which may be granted finally,' but is not appropriate where the injunction 'deals with a matter lying wholly

outside the issues in the suit.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)); *see also Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 326–27 (1999) (quoting *De Beers*, 325 U.S. at 1130); *McCarthy v. Fuller*, 810 F.3d 456, 460–61 (7th Cir. 2015) (injunction against defamatory statements held overbroad because certain of the enjoined statements were not put before the court as defamatory); *Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 712–13 (7th Cir. 2021) ("tailoring" an injunction upon the appellants' argument that "the record does not support such a broad injunction" because it concerned different issues than the violations alleged and the "breadth [was] not necessary to protect the public against future harm"); *Frye v. Hughes*, No. 24-CV-2514, 2025 WL 1191033, at *2 (S.D. Ill. Apr. 24, 2025) (explaining "the Court cannot grant any injunctive relief that . . . extends beyond the subject matter of the lawsuit" and denying motion for preliminary injunction "because it seeks relief beyond the scope of the claims and parties in this lawsuit").

Here, Spectrum asserted claims for ***breaches of legal duties by Ms. Moore*** in disclosing certain Spectrum information, and derivative claims against BHG/Parker in connection with those alleged breaches. Order at 6–9. The Court found a likelihood of success on the merits on those claims—*i.e.*, claims concerning the Moore Information. *Id.* And the Court found that irreparable harm would result from BHG/Parker's "***publicly releasing*** further confidential information." *Id.* at 10 (emphasis added). Accordingly, were the injunction to prohibit any conduct with respect to Spectrum information that was *not* disclosed in alleged violation of a legal duty by Ms. Moore, it would be wholly unconnected to Spectrum's claims and the Court's findings as to the likelihood of success on the merits of such claims. Spectrum has not even attempted to demonstrate a likelihood of success on the merits of a legal breach by disclosure of any Spectrum information by anyone other than Ms. Moore. Similarly, were the injunction to prohibit use generally (as opposed

to use *publicly*) of even the Moore Information, it would be untethered to the Court's finding of irreparable harm. The Court found that irreparable harm would result only through "publicly releasing" the information. *Id.* at 9–10.

BHG/Parker thus respectfully submit that Paragraph 1 of the preliminary injunction should be amended to clarify that it does not improperly grant relief unconnected to the Court's legal bases for awarding injunctive relief, as follows (amendments in red and strikethrough):

> Defendants, and their agents, including attorneys and anyone acting on their behalf or subject to their direction or control, are enjoined from directly or indirectly ~~using,~~ disclosing~~,~~ or publishing Spectrum's confidential and proprietary documents, information, and trade secrets~~, including but not limited to any Spectrum documents~~ that were on the Spectrum laptop Moore retained following her termination from Spectrum, any other Spectrum internal documents or materials Moore possesses or retained following her termination from Spectrum, and any information derived therefrom, in whatever form (the "Confidential Spectrum Materials").

Relatedly, BHG/Parker respectfully submits that Paragraph 2 should be amended to clarify that the information received from Ms. Moore that is covered by the injunction is *confidential* information only, as follows (amendment in red and underscored):

> All <u>confidential</u> Spectrum-related documents or information BHG and/or Parker received directly or indirectly from Moore are Confidential Spectrum Materials subject to this Order.

If Ms. Moore provided a public Spectrum document—*e.g.*, a Spectrum press release—a prohibition on "disclosure" of that public document would be wholly unconnected to Spectrum's claims and the Court's findings as to likelihood of success on the merits and irreparable harm.

## II. THE ORDER SHOULD BE AMENDED TO MAKE ITS PROHIBITIONS SUFFICIENTLY CLEAR

An injunction must also "be clear enough and specific enough to fairly apprise the enjoined party of the prohibited conduct." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 332 (7th Cir. 1984); *see also Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) ("[A] court has an independent duty to assure that the injunctions it issues comply with the directive of Fed. R. Civ.

P. 65(d) that injunctions 'shall be specific in terms' and 'shall describe in reasonable detail . . . the act or acts sought to be restrained.'" (internal citation omitted) (second alteration in original) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476–77 (1974))); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (Federal Rule of Civil Procedure 65 requires "that an injunction be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt"); *Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("[A] federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.").

Here, the inclusion in Paragraph 1 of "directly or indirectly using," as well as the inclusion of documents and information other than those derived from Ms. Moore, force one to guess as to what conduct and speech is actually prohibited. In Paragraph 1, "using"—as opposed to "disclosing" or "using publicly"—could be so broadly construed that it would encompass conduct that cannot be prevented. As investors, for example, it is impossible for BHG/Parker to "unlearn" information imparted by Ms. Moore, and thus not to "indirectly us[e]" it when deciding what steps to take, or not to take, concerning BHG's position in Assertio. BHG/Parker also could not comply with Paragraph 3 of the injunction without persons "acting on their behalf" "using" the Moore Information to make a list of the documents required by Paragraph 3.[1] As such, a common sense reading of "directly or indirectly using" in Paragraph 1 could not prohibit any and all direct or indirect use of the Moore Information. That leaves BHG/Parker without sufficiently clear guiderails as to what type of "use" is permitted and what type of "use" is prohibited under the

[1] Counsel for Spectrum confirmed that it understood the injunction to permit BHG/Parker's counsel to "use" the Moore Information to compile the list required by Paragraph 3 on page 11 of the Order.

Order. The Order should accordingly be amended to make clear that it is *public* use that is prohibited (in this case about *disclosure* of allegedly confidential information)—which is amply covered by the existing prohibitions on "disclosing" and "publishing" in Paragraph 1.

It will also be impossible in many circumstances for BHG/Parker to know what information concerning Spectrum, apart from the Moore Information, BHG/Parker are prohibited from "directly or indirectly using, disclosing, or publishing" under the Order. The Moore Information is a defined universe BHG/Parker can reasonably ascertain. By contrast, BHG/Parker cannot reasonably ascertain whether every other piece of information about Spectrum it might encounter is, in fact, confidential or proprietary information disclosed by someone in alleged violation of a legal duty. Even a document stamped "confidential" could have been intentionally and properly disclosed by Spectrum itself. Moreover, while Ms. Moore was a lawyer for Spectrum with a fiduciary duty and employment agreement with a confidentiality clause, not every person with information about Spectrum is subject to such legal duties. BHG/Parker would have no way of knowing in many circumstances whether information imparted to them by a third party is actually prohibited from disclosure by a legal duty. While the law of course requires parties to take care not to make improper disclosures, an injunction may not subject a party to a risk of ***contempt*** by failing to provide sufficient detail as to what conduct is prohibited. *See, e.g.*, *PMC, Inc.*, 151 F.3d at 619; *Int'l Longshoremen's Ass'n, Loc. 1291*, 389 U.S. at 76.

The Order's failure to apprise BHG/Parker sufficiently of what it prohibits is an additional, independent, reason that the injunction should be amended as proposed above.

## III. THE ORDER SHOULD BE AMENDED TO CLARIFY THAT IT COMPORTS WITH THE FIRST AMENDMENT

The Order expressly states: "Nothing in this Order shall be construed to improper limits [sic] Defendants' rights to free speech and to public discourse." Order at 11. The Order should

accordingly be amended as proposed above to clarify that the injunction does not improperly prohibit speech in violation of the First Amendment to the United States Constitution.

"An order issued in the area of First Amendment rights must be precis[e] and narrowly tailored to achieve the pin-pointed objective of the needs of the case." *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (internal quotation marks and citation omitted). In other words, "an injunction [must] be couched in the narrowest terms that will accomplish the pin-pointed objective of the injunction." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767 (1994) (internal quotation marks and citation omitted). As the Supreme Court has made clear, the law "require[s] that the injunction burden no more speech than necessary to accomplish its objective." *Id.* (internal quotation marks omitted).

As discussed above, the preliminary injunction is relief granted by the Court based upon its finding of a likelihood of success on Spectrum's claims concerning Spectrum information allegedly disclosed by Ms. Moore in violation of legal duties, and its finding that irreparable harm would result if such information were "publicly disclosed." Order at 5–11. An injunction construed to prohibit more than public *disclosure of the Moore Information* is insufficiently tailored to the needs of the case and objectives of the injunction. That is another, independent, reason that the injunction should be amended as proposed above.

## CONCLUSION

Based on the foregoing, BHG/Parker respectfully request that the Court alter or amend the Order as proposed herein to clarify that it comports with the permissible limits of preliminary injunctions and the First Amendment.

DATED: July 2, 2025

Respectfully submitted,

By: /s/ *Alex Spiro*

Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Meredith M. Shaw (*pro hac vice*)
meredithshaw@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, Yew York 10016-7103
(212) 849-7000

Christina E. Sharkey (6316735)
christinasharkey@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7474

*Counsel for Defendants and Counterclaim-Plaintiffs The Buxton Helmsley Group, Inc., and Alexander E. Parker.*

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2025 a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court of the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses that they have provided to the Court.

/s/ *Christina E. Sharkey*
Christina E. Sharkey