IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPECTRUM PHARMACEUTICALS, INC., | ) | Case No. 24 C 12489 |
| Plaintiff, | ) | |
| v. | ) | |
| THE BUXTON HELMSLEY GROUP, INC., *et al*. | ) | Chicago, Illinois<br>March 18, 2026<br>11:13 a.m. |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE MARIA VALDEZ, MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | BAKER BOTTS LLP<br>BY: MR. SCOTT D. POWERS<br>BY: MR. ANDREW B. SWALLOWS<br>401 South 1st Street, Suite 1300<br>Austin, Texas 78704 |
| For the Plaintiff: | BAKER BOTTS LLP<br>BY: MR. KEVIN M. SADLER<br>1001 Page Mill Road, Building One, Suite 200<br>Palo Alto, California 94304 |
| For the Defendant The Buxton Helmsley Group, Inc.: | QUINN EMANUEL URQUHART & SULLIVAN LLP<br>BY: MS. CHRISTINA E. SHARKEY<br>191 N. Wacker Drive, Suite 2700<br>Chicago, Illinois 60606 |
| Pro Se Defendant: | MS. KELLIE ANN MOORE<br>10522 Covington Circle<br>Villa Park, California 92861 |

FAILURE TO SPEAK DIRECTLY INTO MICROPHONE
RESULTS IN INAUDIBLE PROCEEDINGS AS NOTED.

Transcriber: KRISTEN J. CARANNANTE, RPR, RMR, FCRR
Court Reporter
10 Montgomery Place, #1D
Brooklyn, New York 11215
848.459.3124
kjcarannante@gmail.com

* * * * *

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: The case before us is Case No. 24 CV 12489, Spectrum Pharmaceuticals, Inc., v. Buxton Helmsley Group, Inc., *et al.*

THE COURT: All right. Let's get appearances again.

MR. POWERS: Good morning, your Honor. Scott Powers on behalf of the plaintiff, along with Kevin Sadler and Andrew Swallows.

MS. MOORE: Good morning, your Honor. Kellie Moore. I am representing myself *pro se*.

MS. SHARKEY: Good morning, your Honor. Christina Sharkey, from Quinn Emanuel, on behalf of Mr. Parker and The Buxton Helmsley Group.

THE COURT: All right. Ms. Moore, can you explain why you were not here at 10:00?

MS. MOORE: Yes. I saw your note that came out that said that the -- this -- everything was moved -- everything was moved. Like, I didn't realize the hearing itself --

THE COURT: A note --

MS. MOORE: There was a --

THE COURT: -- or a minute order.

MS. MOORE: It was a minute order.

THE COURT: Okay.

MS. MOORE: I don't -- I'm sorry. I don't do litigation, and I may use the wrong words. But it was a note

that said everything was moving forward and in two weeks reconvene and --

THE COURT: Well, that's because you didn't show up.

MS. MOORE: No, but it was -- it came out before.

THE COURT: Okay.

MS. MOORE: Before (indiscernible) today.

THE COURT: So your position is you didn't think you had a hearing this morning?

MS. MOORE: Correct. I was (indiscernible) here. I've been (indiscernible) here in the building.

THE COURT: Yes.

MS. MOORE: I have been --

THE COURT: Did you file something in court with a weather report?

MS. MOORE: I let everybody know that we -- I was watching and monitoring the weather. That's all.

THE COURT: But you filed that in court?

MS. MOORE: I sent it to everyone just to let everyone know that I was coming and I was watching the weather.

THE COURT: Okay. Because we did not receive anything.

MS. MOORE: Okay.

THE COURT: But, anyway --

MS. MOORE: I --

THE CLERK: -- neither here nor there.

I have important matters to deal with, and I know that you have -- Judge Hunt is awaiting you all for a status. Is that right?

MR. POWERS: Yes, your Honor.

MS. MOORE: Correct.

MR. POWERS: And a motion hearing

(Indiscernible crosstalk)

THE COURT: And a motion hearing.

Okay. So we are here on Spectrum's motion to compel production of documents.

MS. MOORE: Um-hmm.

THE COURT: I have reviewed Spectrum's motion, and I have defendant Kellie Ann Moore's response and opposition to the motion.

So why don't I let -- Mr. Powers, are you going to deal with the matter for your side?

MR. POWERS: Yes, your Honor.

THE COURT: All right. So tell me what remains outstanding.

MR. POWERS: Well, it is all outstanding, your Honor. It is nine targeted requests for production in a lawsuit that is entirely about Ms. Moore's communications with the Buxton Helmsley Group and Mr. Parker, and her disclosure of Spectrum confidential information to those person and entities, and we have essentially asked for those communications, the

information that was shared, and the confidential Spectrum information that she retained when she left the company. There is no dispute that those communications occurred. There is no dispute that information was disclosed. There is no information -- there is no dispute that she continues to retain Spectrum's confidential information. That is all we are asking for.

The one additional request for production is the first one, which relates to her defense that she says she didn't sign the confidentiality agreement that's at issue.

MS. MOORE: Correct.

MR. POWERS: We have asked for --

THE COURT: All right. Because you --

MS. MOORE: Sorry.

THE COURT: Let me just ask, Ms. Moore, you are a lawyer, is that correct?

MS. MOORE: I am. I am a transactional lawyer.

THE COURT: All right. So you have no litigation experience?

MS. MOORE: No, no.

THE COURT: You don't --

MS. MOORE: No.

THE COURT: You have never gone to Court on behalf of a client?

MS. MOORE: I have sat and taken notes one time in my

life.

THE COURT: Okay. So here is the first rule.

MS. MOORE: Okay.

THE COURT: When I speak, you stop speaking.

MS. MOORE: Got it.

THE COURT: The second rule is when I get -- let somebody speak, they get to speak uninterrupted by you, as will Mr. Powers has to remain quiet as you get to speak. So there is going to be -- those are the general rules of conduct.

MS. MOORE: Got it.

THE COURT: All right. Mr. Powers?

MR. POWERS: Yes.

MS. MOORE: Sorry.

MR. POWERS: Thank you, your Honor.

The Request For Production Number 1 relates to the defense that she says she did not sign the confidentiality agreement at issue, and we would simply ask for the documents that she may use to support that defense.

These are as plain vanilla as discovery requests possibly could be. We served them over five months ago. We got written responses in November. We sent a January 6 letter to try to work through these issues. We got no response to that. We pinged her again February 2. We got no response to that.

It wasn't until February 16 that we even got the

slightest engagement, and the only reason we got that engagement was because she had asked us for a courtesy copy -- a second courtesy copy of production that we made to her. We have never gotten any engagement or any commitment to actually produce a single piece of paper. The only Spectrum pieces of paper that we have ever gotten in this case from her are things that she has put on the docket in violation of the Court's preliminary injunction.

We just need this -- we just need this defendant to participate in discovery; and, if she won't do it, then we will have to figure out what the next steps are. But all we are asking for is an order that compels her to produce documents responsive to our very straightforward requests within 14 days.

THE COURT: All right. Thank you.

Ms. Moore, why don't you tell me specifically what your objections and why you have not produced information.

MS. MOORE: A couple things.

This is my understanding. Again, I am new to this litigation space, so I apologize if I am making -- if I'm having -- if I'm a little -- I may not use the right words.

My understanding is there is a protocol, and I have asked -- I have asked multiple times -- you say I didn't --

THE COURT: Wait. The third rule is you don't --

MS. MOORE: (Indiscernible crosstalk).

THE COURT: -- direct comments --

MS. MOORE: I'm --

THE COURT: -- directly to counsel --

MS. MOORE: Okay. Okay. I'm sorry.

So this is -- I have written correspondence back to the law firm Baker Botts. And in my correspondence, I have articulated that there -- I have asked for search terms. I have asked them to give me information. What are you searching for? That would help me out. I am not a technical person. And I will comply, but I do ask that they provide feedback and guidance as far as (indiscernible) "Kellie give me everything." That, to me, is ambiguous on its face.

THE COURT: All right. Let's go one --

MS. MOORE: Okay.

THE COURT: -- by one. That's the only --

MS. MOORE: Okay.

THE COURT: -- way --

MS. MOORE: Okay.

THE COURT: -- we are going to be able to deal with this.

So Request For Production Number 1: "Documents that you may use to support your allegation that you did not execute the employee obligation agreement dated May 31, 2016, between you and Spectrum" --

MS. MOORE: Correct.

THE COURT: -- "or agree to its terms." So they are

asking for documents.

MS. MOORE: So, okay. The documents —— can I answer the question? Is that a question or a statement.

THE COURT: Well, I want to know why you haven't produced any documents.

MS. MOORE: Okay. Because the document -- this litigation stems back to --

THE COURT: I understand. So is there a privilege? What are you raising for not producing?

MS. MOORE: Am I to give them back the documents that they gave me from the JAMS matter? Because they were in the JAMS matter with me, as well.

THE COURT: So you can identify the documents responsive --

MS. MOORE: Okay.

THE COURT: -- to this request are as follows. You already have in your custody the following.

MS. MOORE: Okay.

THE COURT: You don't have --

MS. MOORE: Right.

THE COURT: -- in your custody --

MS. MOORE: Okay.

THE COURT: -- and I'm giving you the following. But you have to be complete in your response --

MS. MOORE: Okay.

THE COURT: -- because if you fail to identify --

MS. MOORE: Yes.

THE COURT: -- a document that they have requested --

MS. MOORE: Yes.

THE COURT: -- you could be barred from relying upon that document.

MS. MOORE: Got it. Thank you.

THE COURT: This is something that -- you are a lawyer. You can get little manuals on some of the discovery.

MS. MOORE: I've been trying.

THE COURT: It's pretty simple. I mean, first year of law school, I know it's hard to go back, it would be hard for me, but this is what I do every day. You -- because you are not represented, you are going to be responsible to provide information that is relevant.

MS. MOORE: Okay. So I will -- I can -- I will -- I will do that. I will send the correspondence, identify what they gave me and I tell him which of them -- which documents that I have that I am relying upon that was produced by them originally. That's the documents that I have.

THE COURT: And they are requesting that you produce --

MS. MOORE: And I can give them a copy of what they gave me.

THE COURT: Yes.

MS. MOORE: I can do that.

THE COURT: And they are requesting that you produce any other documents, too, not just one, but all documents that you use to support your allegation that you did not sign the agreement.

MS. MOORE: Okay.

THE COURT: Okay?

MS. MOORE: Okay. I can do that.

THE COURT: Request To Produce 2: "All communications between you and BHG/Parker regarding Spectrum or Rolvedon," is that how you pronounce --

MS. MOORE: Rolvedon.

MR. POWERS: Rolvedon.

THE COURT: "Rolvedon, the drug that caused side effects." So it is pretty simple. All communications between you and BHG/Parker regarding Spectrum or Rolvedon.

MS. MOORE: Okay.

Let me ask you this: They are -- I know they are asking for communications, but the one thing is that they are -- they -- the -- the meat of what they have asked for is documents that they say that I gave to Alex.

THE COURT: No. "All communications" --

MS. SHARKEY: All communications.

THE COURT: -- "between you" --

MS. MOORE: Okay.

THE COURT: I mean.

MS. MOORE: Okay --

THE COURT: -- it is just plain reading at this point.

MS. MOORE: Okay. Okay.

THE COURT: I think what you are doing in your head is you are going through what you think that they want. They are asking for all document.

MS. SHARKEY: Okay.

THE COURT: It's for you to provide that --

MS. MOORE: Okay.

THE COURT: -- in the absence of a privilege that you want to raise.

MS. MOORE: Okay. Okay.

THE COURT: Okay.

Request To Produce 3: "All communication between you and anyone at Blank Rome LLP" --

MS. MOORE: Okay.

THE COURT: -- "regarding Spectrum or Rolvedon."

MS. MOORE: Okay. Uh-huh.

THE COURT: 4: "All communications between you and anyone at Schulte Roth &" -- is it Zabel?

MR. POWERS: I believe so.

THE COURT: "LLP, formerly known" -- I guess it is now known as McDermott --

MS. MOORE: McDermott.

THE COURT: -- Will & Schulte, "regarding Spectrum or Rolvedon."

MS. MOORE: Okay.

THE COURT: "All documents that you shared with or provided to BHG/Parker, Blank Rome, or Schulte Roth regarding Spectrum or Rolvedon." And it goes on.

MS. MOORE: Okay.

THE COURT: I mean, I don't want to sit here and, you know, read them to you.

MS. MOORE: But I don't know what you are explaining to me, so --

THE COURT: But we can't do this --

MS. MOORE: I know.

THE COURT: -- all the time. You have an obligation to -- you know, it is just plain reading. You know, "all communications." I mean that's not difficult. To the extent that you are relying on any privilege, the rules require that you produce a privilege log.

MS. MOORE: Um-hmm.

THE COURT: You can't just say "privilege."

MS. MOORE: Okay.

THE COURT: If you don't produce a privilege log, you could waive your privilege.

MS. MOORE: Okay. Got it. Okay. Produce the privilege log and produce the documents. That's correct.

THE COURT: And again --

MS. MOORE: I will look it up in the manual.

THE COURT: -- I cannot give you any further advice other than making you -- make orders about what you are supposed to do. You have to figure this out. This is a *pro se* help desk you can go to and they can help you figure it out. But your training and experience just in law in general should provide you with some anchor for this.

MS. MOORE: Okay.

THE COURT: You know how to read a case. You know how to look at a rule. You know how to look at a statute.

MS. MOORE: Okay.

THE COURT: All right. This has been pending for so long, I am going to give you two weeks to respond to all of this.

MS. MOORE: That's fair. Thank you.

THE COURT: The motion is granted.

MR. POWERS: Thank you, your Honor.

THE COURT: All right. Anything else that we need to do?

MR. POWERS: Not from the plaintiff, your Honor.

THE COURT: And I know that -- just, Ms. Moore, I know that you had in the past been -- tried to correspond directly with chambers. I don't think you have done it recently. I just want to alert you that is not allowed. We don't allow for

*ex parte* communication. So you know what that is. You are a lawyer. You can, of course, contact my courtroom deputy on an administrative matter.

MS. MOORE: Uh-huh.

THE COURT: If there is a date that is difficult for you to meet, that is appropriate.

MS. MOORE: Okay.

THE COURT: But to talk about the substance --

MS. MOORE: Okay.

THE COURT: -- of anything that is pending before the Court is entirely --

MS. MOORE: Okay.

THE COURT: -- inappropriate.

MS. MOORE: Call your deputy for extra dates.

THE COURT: We also do not need a recitation of the background in every motion that you file.

MS. MOORE: Okay.

THE COURT: We are well aware of the background of the case.

MS. MOORE: Okay.

THE COURT: All right. Thank you very much.

MR. POWERS: Thank you, your Honor.

A VOICE: Thank you, your Honor.

MS. SHARKEY: Thank you, your Honor

MS. MOORE: Thank you.

A VOICE: Appreciate your taking the time.

THE CLERK: Court is adjourned.

MS. MOORE: Quick question, did you also request a joint status report?

A VOICE: You will be able to (indiscernible) in the minute order.

MS. MOORE: Oh, okay. Thank you.

(Concluded at 11:26)

* * * * *

I certify that the foregoing is a correct transcript of the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital recording system.

*/s/ Kristen J. Carannante*
March 26, 2026
Kristen J. Carannante, RPR, RMR, FCRR
Court Reporter/Transcriber