**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| SPECTRUM PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE BUXTON HELMSLEY GROUP, INC., ALEXANDER ERWIN PARKER, and KELLIE ANN MOORE,<br><br>Defendants. | Civil Case No. 1:24-cv-12489<br><br>Hon. LaShonda A. Hunt<br><br>Hon. Maria Valdez |

**SPECTRUM'S MOTION TO COMPEL PRODUCTION AND FOR SANCTIONS**

Pursuant to Federal Rule of Civil Procedure Rule 37(a), Plaintiff Spectrum Pharmaceuticals, Inc. ("Spectrum") respectfully requests that the Court enter an order (1) again compelling Defendant Kellie Ann Moore to produce documents and equipment in response to Spectrum's Requests for Production 1-9, (2) compelling Moore to produce the responsive documents identified on Moore's "preliminary privilege log," and (3) pursuant to Rule 37(b)(2)(C), award Spectrum its reasonable expenses in preparing this motion.

**SUMMARY**

It has now been six months since Spectrum served its requests for production on Moore. Just three weeks ago, this Court granted Spectrum's first motion to compel, ordering Moore to respond to Spectrum's requests by April 1. ECF No. 203. In the three weeks since, Moore has not produced a single document; instead making flimsy privilege assertions, including over communications with an attorney that she has admitted she never had any attorney-client privilege with. Moore has likewise failed to make the laptop and hard-drive devices available for imaging, instead requesting a series of already-rejected conditions that are unreasonable and unnecessary.

Rather than complying with this Court's order, Moore first filed a frivolous motion for protective order after being compelled to produce documents. Moore then filed and served a set of "amended" objections, all of which are waived or already overruled, and a facially deficient and frivolous privilege log. Moore also filed a "separate status report" that attempts to pre-excuse Moore's non-compliance by claiming Moore has not been able to review relevant court orders. None of Moore's actions are credible or present a good faith basis to fail to produce a single document in the nearly six months since Spectrum served its requests. Spectrum requests that the Court again compel Moore to produce documents and equipment in response to Spectrum's requests, compel Moore to produce documents identified on her privilege log, and award Spectrum its costs in connection with the preparation of this motion.

**STATEMENT OF COMPLIANCE WITH LR 37.2**

Counsel for Spectrum sent Moore a letter regarding the matters outlined in this motion on April 7, 2026, in which it asked Moore for a time to confer by phone in an attempt to limit the matters that needed to be brought before the Court for resolution. Moore did not respond. Counsel for Spectrum Scott Powers and Andrew Swallows called Moore on Friday April 10 at 11:10 am CST. Moore answered, but in the discussion claimed not to have received Spectrum's letter. Following that call, Spectrum re-sent the letter to Moore along with the March 18 hearing transcripts and scheduled another call with Moore on Monday April 13, 2026, to attempt to narrow the issues requiring the Court's resolution. On that call, which took place at approximately 2:07 pm CST, Moore represented she would make her first production of some documents responsive to some of Spectrum's requests later that day. As of this filing, Moore has still failed to produce any documents, claiming by an email sent during the morning of April 14, 2026—nearly six months after service of Spectrum's requests for production—that she was "making progress" but

that whatever unspecified activity she was undertaking was "taking more time than anticipated" and that she would send "what I have today." On the April 13, 2026 call, the parties also discussed whether and how Moore would make the laptop and older hard drive available for inspection, but they were unable to reach agreement.

**BACKGROUND AND PROCEDURAL HISTORY**

The Court is familiar with the facts and circumstances underlying the claims in this case as set forth in the Preliminary Injunction Order and Spectrum's motion to compel, which the Court granted on March 18, 2026. *See* ECF Nos. 96; 184; 203. Moore was ordered to comply by April 1, 2026, and was admonished that any documents Moore fails to produce "may not be relied upon by her in this litigation." ECF No. 203.

Following the March 18 hearings, on March 27, 2026, Moore submitted a "separate status report"[1] in which Moore made the specious assertion that "she cannot (and has not yet been able to) review the operative Protective Order, Confidentiality Order, Preliminary Injunction, and Sealing Orders." ECF No. 206 at 2. Moore also claimed she "cannot make informed decisions about what to produce . . . without reading the orders that define those obligations," and again implausibly asserted that "she cannot read the orders." *Id.* at 3.

On March 31, 2026, Moore filed a motion entitled "Motion for Protective Order Regarding Whistleblower Evidence and Federal Regulatory Materials." ECF No. 207. In that motion, Moore requests that: 1) "[n]o party" produce what Moore terms "Whistleblower Evidence to Spectrum without prior judicial review"; 2) that the Court "appoint[]" a "forensic examiner" to "create a complete forensic image of all contents" of "the laptop or hard drive," providing "Moore with a complete copy of the forensic image before releasing the original hardware or any data to Spectrum

[1] The report was supposed to be about "the prospects of settlement." ECF No. 202.

or its counsel,"; 3) require "fourteen days' advance notice to the FDA, SEC, CMS, OCI, and DOJ before any transfer occurs,"; 4) require Spectrum to file an affidavit identifying the custodians and certifying that Spectrum will preserve the hardware's evidence; and 5) that the Court "limit discovery to matters proportional to Spectrum's narrow property-return claims." ECF No. 207 at 9-10.

Moore claims there are five grounds for "good cause": 1) Moore claims to be a whistleblower; 2) Moore alleges Spectrum previously refused to take the laptop she used while at Spectrum; 3) Spectrum's lawsuit was filed after Moore claims to have reported to federal agencies; 4) Moore plans on filing an FCA complaint that must be filed under seal; and 5) Moore claims Spectrum's lawsuit is about retaliation. ECF No. 207 at 8.

On April 1, the date set for compliance with the Court's order compelling Moore's production, Moore did not produce a single document. Instead, early in the morning on April 2, 2026, Moore served on Spectrum Amended Responses and Objections and what Moore called a "preliminary" privilege log. A true and correct copy of that transmittal is attached as Exhibit A. Moore also filed these on the docket at ECF Nos. 209, 210. That same day, based on Moore's "assert[ion] that she cannot . . . 'review the operative Protective Order, Confidentiality Order, Preliminary Injunction, and Sealing Orders . . .,'" the Court granted Moore "an extension of seven days from the date" Spectrum provided the orders for Moore to "tender her discovery responses." ECF No. 211. Spectrum provided Moore the orders at issue that same day, making Moore's discovery responses due April 9, 2026. ECF No. 212. Moore did not produce any additional documents, responses, or privilege log on April 9.

## LEGAL STANDARD

The Federal Rules permit discovery regarding any relevant, non-privileged matter. Fed. R.

Civ. P. 26(b)(1). The Federal Rules' scope encompasses any matter that affects or could affect anything at issue in the litigation. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Under Federal Rule of Civil Procedure 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 161 (N.D. Ill. 2017). "Ultimately, the party objecting to discovery bears the burden to show the requested discovery is improper." *Id.*

"Rule 11 imposes certain duties on attorneys and *pro se* parties. One duty is to not make filings 'for any improper purpose,' like harassment. Another duty is to make 'an inquiry reasonable under the circumstances' and then submit only 'claims' and 'legal contentions' that 'are warranted by existing law.'" *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024) (internal citations omitted). "Under Federal Rule of Civil Procedure 11, courts may sanction parties who file frivolous pleadings." *Matlin v. Spin Master Corp.,* 979 F.3d 1177, 1181 (7th Cir. 2020). Rule 37(b) allows the Court to issue sanctions for the "failure to comply with a court order." Fed. R. Civ. P. 37(b).

## ARGUMENT

None of Moore's attempts to avoid her duty to produce relevant, responsive communications are proper or remotely credible. Moore's motion for a protective order does not establish good cause, Moore's amended responses and objections and privilege log do not support withholding documents, and Moore's claims about being unable to comply due to document access issues are not credible and, in any event, foreclosed by Judge Hunt's rulings and admonishments at the March 18th hearing. Moore continues to waste Spectrum's and this Court's time and is not participating in discovery in good faith. The Court should compel Moore to produce these

documents, again, and award Spectrum its reasonable costs.

### A. Moore's motion for protective order does not justify non-production.

For the reasons more fully stated in Spectrum's response in opposition to Moore's motion for protective order, Moore's motion provides no justification for Moore's refusal to produce documents. *See generally* ECF No. 222. Moore's motion is merely an attempt to inject issues Judge Hunt has held are not part of this case and which Moore has been admonished to stop. ECF No. 222 at 1-4, 6-7. Moore's motion is unconnected from the standard for imposing protective orders, and the arguments in that motion are unrelated to Moore's requested relief. ECF No. 222 at 5-6. Moore's motion presents no basis for her refusal to comply with this Court's order compelling the production of documents.

### B. Moore's amended responses and objections and privilege log do not justify non-production.

***Moore's amended responses and objections do not justify non-production***: On March 18, 2026, this Court compelled Moore to produce documents and equipment responsive to Spectrum's requests for production. ECF No. 203. Instead of producing any documents or equipment, Moore served "amended responses and objections." ECF No. 210. To the extent Moore's amended objections are duplicative of previously asserted objections, those objections were overruled when this Court granted Spectrum's motion to compel over those objections. ECF No. 203. To the extent those amended objections contained any different objections, they are untimely and waived. Spectrum's First Requests for Production were served on Moore on October 16, 2025, and any objections were due on November 17, 2025. Objections served for the first time in April 2026 are untimely and long since waived. *Buonauro v. City of Berwyn*, No. 08-C-6687, 2011 WL 116870, at *4 (N.D. Ill. Jan. 10, 2011) (finding that the defendant waived the objections it omitted from its initial response to the plaintiff's discovery requests). Spectrum's requests have not changed from

the time the Court granted Spectrum's motion to compel. Those requests are relevant, proportional, and narrowly tailored to seek the evidence relevant to Spectrum's claims.

Moreover, far from establishing any reasonable basis for Moore to withhold documents from production, Moore's amended responses and objections demonstrate the extent of her obstinacy, including her willingness to misrepresent the record in her attempts to avoid her discovery obligations. For example, Moore writes that she "voluntarily filed a Technology Report with the Court identifying the categories of documents and contracts on her devices—before any obligation to do so." ECF No. 210 at 2. But, in fact, that report was filed as part of Judge Hunt's order that "[b]y 10/8/25, Defendant Moore is ordered to comply with Paragraph 3 of the PI Order." ECF No. 147; *see also* ECF No. 96 at 11, ¶ 3 (Defendants are ordered . . . to provide counsel for spectrum with a list identifying and describing all Confidential Spectrum Materials in any Defendant's possession, custody, or control, and the location of each of those Confidential Spectrum Materials."); Exhibit B, 9/24/25 Hearing Tr. at 17:20-22 ("you'll see in the preliminary injunction order, you're required to provide a list of specific information to plaintiff's counsel, and so you need to comply with that by October 8th."). And, Moore writes "Spectrum's claims against Moore rest on alleged retention of Spectrum property . . . Moore's communications with BHG/Parker about Spectrum's drug safety record, clinical trial data, and regulatory submissions bear no relevant to those narrow claims." ECF No. 210 at 9. But, Spectrum's claims are about Moore's wrongful disclosure of to BHG/Parker, *see generally* ECF No. 96, as Judge Hunt emphasized to Ms. Moore just three weeks ago: "This is a lawsuit that was filed by your former employer indicating that you were terminated and you were required to return the company laptop and not to disseminate - - and to not disseminate confidential information." ECF No. 222-2 at 8:14-18.

Moore's objections do not justify Moore's non-production. The Court should require Moore to produce the documents and electronic equipment to Spectrum.

***Moore should be required to produce the relevant documents identified on her privilege log***: Moore's privilege log fails to substantiate an assertion of privilege that would justify withholding responsive documents on her privilege log from Spectrum.[2] The Court should order Moore to produce those documents.

*Moore's privilege log is deficient*: This Court's procedures state that "Any privilege log must be detailed enough to enable other parties to assess the applicability of the privilege asserted, and should include: (1) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document and any attachments; (3) the type of document; (4) the Bates numbers of the documents; (5) the nature of the privilege asserted; and (6) a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or if the document constitutes work product."[3] Most of Moore's privilege log contains insufficient descriptions of the subject matter to be able to determine whether any privilege even plausibly applies. *See, e.g.,* ECF No. 209 at 2 (description for log 3 is only "Re: Intro to Kellie Moore."). Without an adequate basis to assess privilege, Moore has not established that withholding is proper.

*Moore has no attorney-client privilege over documents and communications shared with Blank Rome or BHG/Parker*: Moore did not have an attorney-client relationship with Blank Rome or BHG/Parker, claiming only that the privilege exists because "Moore communicated with Blank

---

[2] Moore's privilege log also identifies categories of documents that are not responsive to any of Spectrum's requests, like alleged reports to government agencies or Moore's communications with her own attorneys. These are log entries 57-62, and 64. These documents should not be on Moore's log, and Spectrum is not seeking to compel production of those documents.

[3] Available at https://www.ilnd.uscourts.gov/judge_display.php?LastName=Valdez.

Rome attorneys for the purpose of obtaining or providing legal advice regarding Spectrum's conduct." ECF No. 210 at 11. But that is not the test, "[t]he attorney-client privilege exists only if an attorney-client relationship exists" *Vaccaro v. MSG (Illinois), Inc.*, 789 F. Supp. 924, 927 (N.D. Ill. 1992). Where there is no formal relationship, "to establish an implied attorney-client relationship, it must be shown that the client believed that he or she was represented by the attorney." *Livers v. Wu*, 6 F. Supp. 2d 921, 926 (N.D. Ill. 1998). Moore cannot claim such a belief because Moore sent Blank Rome an e-mail on March 24, 2026 in which Moore stated, "I am not, and have never been, a client of yours or of Blank Rome LLP in connection with this matter or any other matter."[4] *See* Exhibit C, 3/24/2026 e-mail from Moore to Blank Rome at 1. There is thus no good-faith basis for Moore's assertion of attorney-client privilege. "Merely asking legal questions of someone else's lawyer does not create a lawyer-client relationship such that the attorney-client privilege attaches." *Vaccaro*, 789 F. Supp. at 927.

*Spectrum's confidential information is not Moore's work product*: The work-product doctrine does not support withholding Spectrum's confidential information. The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). Spectrum's confidential information that Moore obtained during the course of Moore's employment more than seven years ago cannot be Moore's work product. Additionally, "[f]actual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions, or other discovery." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). Moore's disclosure of

---

[4] Incredibly, Moore placed this document—which disclaims any attorney-client privilege with Blank Rome—on her privilege log, with the assertion that the document is protected by the attorney-client privilege. ECF No. 209 at 6 (Log Entry 43). The only reason Spectrum has a copy of the document, which on its face reveals Moore's privilege assertion to be irrefutably false, is that Blank Rome provided it to Spectrum with its objections to Spectrum's subpoena directed to Blank Rome.

Spectrum's information to third parties is the very basis of Spectrum's claims. Moore is not entitled to hide the circumstances and substance of those disclosures by claiming privilege. At a minimum, if Moore's transmittal communications contain any "mental impressions, conclusions, opinions, or legal theories" Moore claims are protected by the federal rules (*see* Fed. R. Civ. P. R. 26(b)(3)(B)), the appropriate course of action would be to redact the portions of those documents containing that material, not a wholesale failure to produce.

*There is no "common interest privilege justifying non-production*: The "common interest" doctrine is a limited exception to the general rule that disclosure to third parties waives the attorney-client privilege. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014). As discussed above, however, Moore has no attorney-client privilege or work-product protection with respect to the documents identified on Moore's privilege log, and Moore does not have a common interest with Parker, an interest which must be "identical, not similar, and be legal, not solely commercial." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 515 (N.D. Ill. 2020). "A shared rooting interest in the 'successful outcome of a case' . . . is not a common *legal* interest." *Miller UK*, 17 F. Supp. 3d at

*Moore's whistleblower arguments are not a basis to withhold production:* Moore's continued attempts to invoke alleged whistleblower status as a litigation tactic directly contradict Judge Hunt's instructions at the March 18 hearing. Moreover, there is no such thing as "Whistleblower Protection" that allows a party to refuse to produce relevant evidence discoverable under the Federal Rules of Civil Procedure. Rule 26 says "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." And none of the statutes cited by Moore support this alleged "whistleblower protection" that precludes production of relevant evidence. *See e.g.,* 15 U.S.C. § 78u-6(h)(2)(A)&(C) (noting that

information may be " required to be disclosed to a defendant or respondent in connection with a public proceeding" and expressly stating that "Nothing in this section is intended to limit, or shall be construed to limit, the ability of the Attorney General . . . to share such evidence with potential witnesses or defendants in the course of an ongoing criminal investigation."). Moreover, "[t]here is no 'informer's privilege' in civil litigation. Defendants are entitled to learn in discovery who has relevant evidence, and to obtain that evidence." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007).

*Moore's "consulting expert" claims are unsupported*: Moore has provided no plausible basis to withhold communications she claims to have sent to the individual she claims is a "computer litigation technology expert" in 2019. Rule 26(b)(4)(D) "ordinarily" prevents discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation." Moore has offered nothing beyond a conclusory assertion that any communications with this unknown person were made after Moore retained or employed them for the purposes of preparing for litigation in 2019.

**C. Moore's other proffered reasons for non-compliance are not credible or proper.**

Moore also claims to be unable to comply with the Court's order compelling production for a myriad of other reasons. Most strongly emphasized were Moore's claims that "she cannot (and has not yet been able to) review the operative Protective Order, Confidentiality Order, Preliminary Injunction, and Sealing Orders." ECF No. 206 at 2. But Spectrum's counsel had already provided the preliminary injunction order to Moore on September 24, 2025. A true and correct copy of that e-mail is attached as Exhibit D. And, on December 9, 2025, Moore responded to Spectrum's motion for entry of a protective order, a response which: 1) referenced Spectrum's motion and the proposed confidentiality order that the Court entered; and 2) quoted the preliminary

injunction order as a basis to deny Spectrum's proposed protective order. ECF No. 164 at 1, 15 (Moore describing the two-step process contained in the protective order, stating "Judge Hunt's June 5, 2025 Preliminary Injunction Order contains an express carve-out in Paragraph 8 permitting disclosure 'in connection with any current or potential government investigation'" and arguing that the proposed protective order would "undermine this carve-out."). Spectrum's counsel had also previously e-mailed Moore the proposed protective/confidentiality order when it submitted that Order to the Court at the time it moved for entry of the order. Attached as Exhibit E is a true and correct copy of that communication. As for the sealing orders, they were all minute entries, which Moore received by email at the time they were issued (and thus which required no PACER access to review). And in any event, there is no connection between any of the orders and Moore's ability to identify and produce responsive documents.[5]

Moreover, Moore's PACER access was the subject of a separate motion that was recently denied by Judge Hunt. ECF No. 204. At the March 18, 2026 hearings, Judge Hunt told Moore that "I'm not ordering anyone to do anything because these documents have been provided to you . . . Don't file a motion with me. I'm not ordering [Spectrum's counsel] to give you anything because you signed up for electronic access." ECF No. 222-2, at 24:9-15. Judge Hunt also invited Moore to visit the Clerk's office in person if she was truly having trouble accessing court documents—an invitation Moore apparently declined to accept. ECF No. 222-2, at 20:13-20.

Accordingly, Moore's claims to not have access to relevant court orders are both not credible, and not a justification for Moore's failure to comply with her discovery obligations.

[5] Notably, Moore did not raise the issue of her purported lack of access to any of these orders in response to Spectrum's original motion to compel or at the hearing on that motion.

**D. Moore has not produced her initial disclosures.**

In addition to failing to produce any documents or equipment responsive to Spectrum's requests, Moore has still not produced her initial disclosures. Moore previously represented to the Court that she would do so within 14 days of the separate status report filed on January 16, 2026. ECF No. 169 at 4 ("Moore will serve her initial disclosures on all parties within fourteen (14) days of the date of this filing"). Despite Spectrum's request that Moore confirm a time by when Moore would produce her initial disclosures such that Spectrum could still request discovery for the matters contained therein before the cutoff, if necessary, Moore has not. Spectrum requests that the Court order Moore to produce her required initial disclosures.

**E. The Court should award Spectrum its reasonable costs to prepare this motion.**

This Court compelled Moore to respond to Spectrum's requests for production with a compliance date of April 1, 2026, a date that was later extended to April 9, 2026 based on Moore's misrepresentations that she was unable to review the preliminary injunction, protective order, and sealing orders. Moore met neither of those deadlines. In five-plus months, Moore has not produced a single document and did not make any equipment available for imaging. Instead, Moore tried to get around producing anything by falling back on arguments that have been rejected, objections that have been overruled, frivolous or deficient privilege assertions, and excuses that are not believable. Moore was admonished: "[y]ou need a good faith basis for what you are filing; and right now, you are clouding up the docket with unnecessary filings which really waste scarce judicial resources, and you're costing everybody else a lot of money unnecessarily. And that is not fair, and that is not right." ECF No. 222-2., at 9:25-10:4. That, however, was apparently not enough to deter Moore.

Rule 37(b) states that where a party fails to comply with a court order, "[i]nstead of or in

addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Moore's non-compliance and continued refusal to participate in discovery have forced Spectrum to seek relief from the Court to protect its rights. Moore should not be allowed to continue to unreasonably extract time, effort, and money from Spectrum without consequence. Moore has had months to produce even a single document or piece of equipment—Spectrum's requests were served October 16, 2025—but has not. There is no excuse for this months-long delay, particularly after this Court ordered Moore's compliance and has already given Moore an extension.

Accordingly, Spectrum requests that the Court award Spectrum its reasonable costs in preparing this motion.

## CONCLUSION

Spectrum respectfully requests that the Court enter an order again compelling Moore to produce documents responsive to Spectrum's requests, compelling Moore to produce the responsive documents identified on Moore's "preliminary privilege log," compelling Moore to produce her initial disclosures, and awarding Spectrum its reasonable costs and expenses incurred in pursuing this relief.

Dated: April 14, 2026

**BAKER BOTTS L.L.P.**

*/s/ Kevin M. Sadler*
Kevin M. Sadler (*pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Tel: (650) 739-7500

Scott D. Powers (*pro hac vice*)
Andrew B. Swallows (*pro hac vice*)
401 South 1st Street, Suite 1300
Austin, Texas 78704
Tel: (512) 322-2500

John B. Lawrence (*pro hac vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Tel: (214) 953-6873

James J. Beha II (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2500

*Counsel for Plaintiff*

## CERTIFICATE OF CONFERENCE

Counsel for Spectrum conferred with Moore regarding the production issues referenced above on April 10, 2026 and April 13, 2026. Moore claimed on April 13, 2026 that she would make a list of documents and then that she would produce—that same day—some unspecified number of documents related to certain of Spectrum's Requests for Production on April 13, 2026. She failed to live up to that commitment. Further, the parties were unable to reach any agreement pursuant to which Moore would make the laptop and hard drive available for forensic imaging.

*/s/ Scott D. Powers*
Scott D. Powers

**CERTIFICATE OF SERVICE**

The undersigned certifies that, in addition to electronic notice through the Court's cm/ecf system as requested by Moore (*see* ECF Nos. 130, 131), on April 14, 2026, a copy of the foregoing document was served on Moore via the email below at Moore's request.

*/s/ Kevin M. Sadler*
Kevin M. Sadler

Kellie Ann Moore
10522 Covington Circle
Villa Park, CA 62861
(818) 272-3253
biomedlegal@gmail.com

*Pro se*