**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| SPECTRUM PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE BUXTON HELMSLEY GROUP, INC., ALEXANDER ERWIN PARKER, and KELLIE ANN MOORE,<br><br>Defendants. | Civil Case No. 1:24-cv-12489<br><br>Hon. LaShonda A. Hunt<br><br>Hon. Maria Valdez |

**SPECTRUM'S MOTION TO COMPEL PRODUCTION FROM BHG/PARKER REGARDING RFPs 1-7 AND TO MODIFY SCHEDULING ORDER**

Pursuant to Federal Rule of Civil Procedure Rule 37(a), Plaintiff Spectrum Pharmaceuticals, Inc. ("Spectrum") respectfully requests that the Court enter an order (1) compelling Defendants the Buxton Helmsley Group, Inc. and Alexander Erwin Parker (together "BHG/Parker") to produce documents responsive to Spectrum's RFPs 1-7, produce unredacted copies of certain already-produced documents, and produce each of the hundreds of withheld documents identified on its privilege log, and (2) modifying the scheduling order for the limited purpose of allowing Spectrum 60 days following complete receipt of the documents responsive to Spectrum's RFPs 1-7 to conduct deposition(s) or take additional discovery related to any such documents.

**SUMMARY**

Spectrum served its requests for production on BHG/Parker seven months ago. Just one week before the fact discovery cutoff, BHG/Parker made its first material production of documents, but it did so in a way that was both clearly improper and incomplete. The documents

BHG/Parker produced include improper redactions, and BHG/Parker's privilege log identifies 474 documents withheld from production without any credible basis for withholding. Unquestionably, BHG/Parker have failed to provide a complete accounting of the confidential information that Moore provided to them and have failed to produce the documents establishing the ill-gotten financial gain they obtained therefrom. These are the documents that are at the core of the disputed issues in this litigation, and they are the documents that BHG/Parker and Moore have been actively trying to hide from Spectrum since this litigation began. Ex. 1, PARKERBHG-0001694 (Moore writing "[t]hese guys want to drain what we know dry…. NO – Not getting docs from us."). BHG/Parker's refusal to comply with their discovery obligations before this Court's upcoming May 20, 2026 deadline has forced Spectrum to file this motion to protect its rights.

## STATEMENT OF COMPLIANCE WITH LR 37.2

As further detailed in the background and procedural history below, counsel for Spectrum has communicated and conferred by telephone with counsel/former counsel for BHG/Parker more than a dozen times over a period of five months to attempt to resolve the various discovery issues raised in this motion. Counsel for BHG/Parker have not committed to producing, and have instead withheld, hundreds of documents sought by Spectrum, necessitating this motion.

## BACKGROUND AND PROCEDURAL HISTORY

The Court is familiar with the facts and circumstances underlying the claims in this case as set forth in the Preliminary Injunction Order and Spectrum's first motion to compel production from Moore, which the Court granted on March 18, 2026. *See* ECF Nos. 96; 184; 203.

Spectrum served its first requests for production on BHG/Parker on October 8, 2025. Included were seven requests for production, narrowly directed at the core issues in this case[1]:

**REQUEST FOR PRODUCTION NO. 1:** All Communications

[1] A true and correct copy of Spectrum's RFPs is attached as Exhibit 2.

related to Spectrum or Rolvedon between BHG/Parker and Moore.

**REQUEST FOR PRODUCTION NO. 2:** All Communications related to Spectrum or Rolvedon between Moore and any person acting in concert with BHG/Parker or under BHG/Parker's control, including but not limited to Blank Rome LLP or Schulte Roth & Zabel LLP.[2]

**REQUEST FOR PRODUCTION NO. 3:** All Documents or tangible things related to Spectrum or Rolvedon that Moore provided to BHG/Parker, or to any person acting in concert with BHG/Parker or under BHG/Parker's control, including but not limited to Blank Rome LLP or Schulte Roth & Zabel LLP.

**REQUEST FOR PRODUCTION NO. 4:** All Documents listed in the June 26, 2025 list entitled "BHG/Parker's List Pursuant to June 5, 2025 Preliminary Injunction Order, Paragraph 3."

**REQUEST FOR PRODUCTION NO. 5:** All Documents or Communications reflecting Moore providing information for inclusion in, or participating in the drafting or editing of, BHG/Parker's Communications with the Assertio Parties[3]; BHG/Parker's November 8, 2024 letter to Assertio stockholders; November 8, 2024 press release; November 11, 2024 press release; November 15, 2024 letter to the U.S. Senate Committee on Health, Education, Labor & Pensions; November 15, 2024 press release; or November 29, 2024 letter to the Public Company Accounting Oversight Board.

**REQUEST FOR PRODUCTION NO. 6:** All Communications that relate to the photographs of Spectrum documents that BHG/Parker posted to BHG's website in November 2024.

**REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all purchases, sales, holdings, positions, put or call or other options, or other transactions or holdings involving Assertio stock by BHG/Parker or any companies, entities, or persons affiliated with BHG/Parker or otherwise subject to their direction or control.

BHG/Parker served responses and objections on November 14, 2025.[4]

---

[2] Schulte Roth is now McDermott Will & Schulte LLP.

[3] Assertio Holdings, Inc. ("Assertio") is Spectrum's parent company, against whom BHG/Parker asserted a third-party claim. BHG/Parker's third-party claims against the Assertio Parties were dismissed with prejudice on November 25, 2025. ECF No. 160.

[4] A true and correct copy of BHG/Parker's responses and objections is attached as Exhibit 3.

On December 23, 2025, counsel for Spectrum sent a letter to Quinn Emanuel (BHG/Parker's then-counsel) setting forth Spectrum's concerns with BHG/Parker's objections and failure to produce documents and requesting a discovery conference.[5] Counsel for BHG/Parker did not respond, so counsel for Spectrum followed-up on January 6, 2026, resulting in a conference that took place on January 12, 2026.

Following that call, Quinn Emanuel forwarded a draft settlement agreement for Spectrum's consideration. Over the next several weeks, the parties traded drafts back and forth, attempting to reach agreement. During that process, the parties also continued to discuss discovery issues. Because the parties' settlement discussions appeared to be progressing, however, the parties mutually agreed to defer final resolution of the document production discussion pending resolution of their efforts to resolve the case by settlement.

On March 31, 2026, counsel for Spectrum sent an email to Quinn Emanuel stating that Spectrum's view was that the parties' settlement discussions had reached an impasse and proposing a schedule for completing document production by April 17. Having again received no response to that communication, counsel for Spectrum sent a follow-up email on April 6. Quinn Emanuel responded later that day, promising a responsive communication the following day, April 7. On April 7, Quinn Emanuel advised that it would be withdrawing as counsel for BHG/Parker.

Following initial calls with BHG/Parker's new counsel at Falcon, Rappaport, & Berkman LLP, Spectrum's counsel sent an e-mail to BHG/Parker's counsel at FRB on April 17, 2026, outlining the above-described history and stating that Spectrum would be forced to move forward with a motion to compel due to the lack of production from BHG/Parker. On Wednesday April 22, 2026, counsel for BHG/Parker informed Spectrum that BHG/Parker's production would be

---

[5] A true and correct copy of this letter is attached as Exhibit 11.

coming later that week. On April 24, 2026, BHG/Parker made its first production, consisting of 15 documents. BHG/Parker did not serve a privilege log at that time. Many of the documents included e-mail messages in threads that were entirely redacted, including the to/from, date, and subject line, such as this below[6]:

> [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted]
>
> From: **K M** <biomedlegal@gmail.com>
> Date: Mon, Jul 22, 2024 at 4:57 PM
> Subject: Fwd: Autism
> To: <apatel@assertiotx.com>, <bogrady@assertiotx.com>, <corpgov@assertiotx.com>, <mkreps@darrowir.com>, <sschlessinger@assertiotx.com>
>
> Hi there,

Following review of this production, counsel for Spectrum again conferred with counsel for BHG/Parker by letter on April 30, 2026, identifying several issues with the production and requesting that BHG/Parker supplement the production, remove the inappropriate redactions, and produce a privilege log for any documents redacted or withheld.[7] Counsel for Spectrum held a telephone call with counsel for BHG/Parker to discuss these issues on May 4, 2026. Counsel for Spectrum again spoke with counsel for BHG/Parker on May 11, 2026, during which counsel for BHG/Parker stated that BHG/Parker would produce additional materials by the end of the day on Tuesday, May 12, 2026.

---

[6] This snip is taken from document PARKERBHG-0000001. BHG/Parker designated these documents as confidential and the documents contain Spectrum's confidential information, so Spectrum is not attaching the documents to its motion. This is representative of the types of redactions contained in documents PARKERBHG-0000001, PARKERBHG-0000010, PARKERBHG-0000027, PARKERBHG-0000115, and PARKERBHG-0000135.

[7] A true and correct copy of this letter is attached as Exhibit 12.

On May 11, 2026, counsel for BHG/Parker stated that BHG/Parker would supplement their production and/or produce some form of privilege log by the end of the day on May 12, 2026. They did not. On May 13, 2026, after prompting from Spectrum's counsel, BHG/Parker made two separate productions and produced two privilege logs.

## LEGAL STANDARD

The Federal Rules permit discovery regarding any relevant, non-privileged matter. Fed. R. Civ. P. 26(b)(1). The Federal Rules' scope encompasses any matter that affects or could affect anything at issue in the litigation. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Under Federal Rule of Civil Procedure 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 161 (N.D. Ill. 2017). "Ultimately, the party objecting to discovery bears the burden to show the requested discovery is improper." *Id.*

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment" of the scheduling order. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

## ARGUMENT

### A. Spectrum's requests seek documents that are at the core of the disputed issues in this litigation.

Each of Spectrum's requests for production directly tie to the claims and defenses at issue in this case. The thrust of Spectrum's complaint is that Moore—Spectrum's former in-house counsel—violated her contractual and fiduciary duties by improperly retaining Spectrum's confidential materials and information and then disclosing those materials and information to

Defendants BHG/Parker (including to Parker's former attorneys), and that BHG/Parker tortiously induced her to do so and participated in that breach. ECF No. 1, ECF No. 96.

Requests 1-3 and 5-6 seek documents related to BHG/Parker's improper procurement of Spectrum's confidential information from Moore. Ex. 2 at 3-4. Request 4 seeks documents listed or described in the list BHG/Parker produced in compliance with the Court's preliminary injunction order.[8] Ex. 2 at 4.

Request 7 seeks BHG/Parker's Assertio stock purchase/trading history, which is directly relevant to Spectrum's demand in its Complaint seeking "disgorgement of all unjust gains Defendants received as a result of their wrongful conduct, including as a result of taking a short position on Assertio's stock." ECF No. 1 at 22–23, ¶ G.

Each of these requests is proper under the Federal Rules, which broadly allow discovery into any relevant, non-privileged matter. Fed. R. Civ. P. 26(b)(1). Spectrum's requests go to the heart of the dispute—the confidential Spectrum information BHG/Parker obtained from Moore, BHG/Parker's inducement of Moore, and BHG/Parker's Assertio stock trading activity from that time period. This Court should thus compel BHG/Parker to produce complete responses to Spectrum's requests.

**B. BHG/Parker cannot meet their burden to show that Spectrum's requested discovery is improper.**

**Request Nos. 1-3, 5-6:** BHG/Parker objected to these requests on varying boilerplate grounds of privilege, ambiguity/vagueness, relevance, proportionality, that the requests were duplicative, and that the documents were not in BHG/Parker's control or should be obtained from Moore. Ex. 3 at 6-10. These boilerplate objections can be easily dispensed with.

[8] The Preliminary Injunction order required BHG/Parker to "provide counsel for Spectrum with a list identifying and describing all Confidential Spectrum Materials in any Defendant's possession, custody, or control, and the location of each of those Confidential Spectrum Materials." ECF No. 96 at 11.

Communications between BHG/Parker on the one hand, and Moore on the other, are not privileged. Moore was not Parker's attorney, and the communications involving Spectrum's underlying confidential information that Moore obtained during her employment cannot be BHG/Parker's work-product. Parker's former attorneys at Blank Rome L.L.P. agree. ECF No. 234 at 5 ("On the whole, these documents are not privileged or otherwise shielded from production."); Ex. 4, PARKERBHG-0004073 at '074 (February 14, 2025 e-mail from Blank Rome attorney to Moore stating "you are not, and never have been, a client of Blank Rome . . . . During our conversation, there was no suggestion or indication that we would serve as your counsel . . . the assertion . . . that you provided us with this information 'only . . . to secure legal representation' for yourself is simply mistaken.").

BHG/Parker's boilerplate ambiguity, relevance, and proportionality objections are also misplaced. Spectrum's requests are plain, unambiguous, and are both relevant and proportional to the needs of the case—they are the very communications and documents that form the central factual basis of Spectrum's claims of wrongful disclosure and BHG/Parker's tortious interference with Spectrum's contractual rights and participation in Moore's breaches.

The requests are also not duplicative and seek documents that are in Parker's control. Even if some documents are responsive to more than one request, Spectrum is not asking that BHG/Parker produce duplicate copies of identical communications. And, documents in the hands of BHG/Parker's former attorneys *are* in BHG/Parker's possession, custody, and control. *See Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, No. 90 CIV. 5593 (MGC), 1994 WL 419830, at *9 (S.D.N.Y. Aug. 10, 1994) ("Defendants' counsel . . . initially justified the non-production of these documents on the ground that documents in the possession of former counsel are not within 'the possession, custody or control of the party upon whom the request is served.'

This abstract position is not one which can be maintained in good faith by responsible counsel.”).

Finally, BHG/Parker “are not permitted to avoid responding, fully and completely, to a request for production simply because another person or entity might also possess the requested information.” *Gecko Robotics, Inc. v. Summit NDE, LLC*, No. 2:23-CV-229-PPSJEM, 2023 WL 11645709, at *3 (N.D. Ind. Nov. 29, 2023); *see also, e.g.*, *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19 C 50122, 2022 WL 18937942, at *2 (N.D. Ill. May 10, 2022) (“The Court also agrees that while Defendant Hilti may have responded to a document production request that may also be responsive to this production request, that does not relieve Defendant RectorSeal of its obligation to respond.”).

**Request No. 4:** BHG/Parker stated they would produce the documents responsive to this request, which were included on the list BHG/Parker created to comply with the Court’s preliminary injunction order, but they have not done so, as there are numerous documents identified on the list that are absent from the documents produced by BHG/Parker. The Court should compel BHG/Parker to produce a complete set of the confidential materials they received from Moore as listed by them in the document they created to comply with the Court’s preliminary injunction order.

**Request No. 7:** In response to Spectrum’s Request No. 7—which seeks documents sufficient to show purchases, sales, holdings, positions, put or call or other options, or other transactions or holdings involving Assertio stock by BHG/Parker (or related entities subject to their direction or control)—BHG/Parker objected first on relevance and proportionality grounds. The documents requested, however, are directly relevant to Spectrum’s demand in its Complaint seeking “disgorgement of all unjust gains Defendants received as a result of their wrongful conduct, including as a result of taking a short position on Assertio’s stock.” ECF No. 1 at 22–23

¶ G. "'In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud," which "'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *SEC v. Ferrone*, 188 F. Supp. 3d 709, 714 (N.D. Ill. 2015) (quoting *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)) (internal citation omitted).

Parker's trading (and shorting) history related to Assertio stock is directly relevant—and necessary to—Spectrum's requested relief. Parker himself stated "BHG intends to make a donation to a cancer-focused charity after closing our short position, using a portion of the profits expected to be realized over the near-term." ECF No. 3-17 at 5. Thus, BHG/Parker cannot credibly contend that no responsive documents exist. Yet none have been produced. BHG/Parker's trading history, i.e., the transactions, are not privileged, the request is not vague, and BHG/Parker are in the best position to have documentation of their own trading history.

**C. BHG should be compelled to produce unredacted versions of already-produced documents.**

As shown above, BHG/Parker produced several e-mails where the recipients, date, and subject line were redacted. These redactions are facially inappropriate, as those items of information are generally required to be included on a privilege log. *See Durham v. Walmart, Inc.*, No. 3:23-CV-1172-DWD, 2023 WL 8292841, at *7 (S.D. Ill. Dec. 1, 2023) ("Redactions of emails will not redact the names of recipients or the subject line of the emails, unless the subject line is itself privileged or contains the sensitive information described above, in which case only so much of the subject line will be redacted as may be needed."); *Bartz v. Derus*, No. 24-CV-398-WMC, 2025 WL 2840315, at *3 (W.D. Wis. Oct. 7, 2025) ("[t]he to/from/date/subject line information, if present in the forwarded email, is not privileged and should be unredacted"). BHG/Parker should be compelled to re-produce these documents, removing the inappropriate redactions.

**D. BHG/Parker should be compelled to produce each of the 474 documents inappropriately withheld through frivolous assertions of privilege.**

As part of their May 13, 2026 production, BHG/Parker produced two privilege logs identifying 474 documents.[9] All 474 documents were withheld under what BHG/Parker have termed the "Common Interest Privilege," with 183 of those also withheld under the "attorney-client privilege" (meaning 291 documents rested only on a so-called "Common Interest Privilege"). There were no other privileges asserted. Every one of these assertions of privilege is frivolous and lacks a good-faith basis in law or fact, and this Court should compel the complete production of these documents.

First, for the 291 documents that assert only the "Common Interest Privilege," as BHG/Parker call it, BHG/Parker have not asserted any privilege at all. "The 'common interest' doctrine is not a separate privilege, in and of itself. It is a rule of non-waiver." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014). Accordingly, "[u]nless the party asserting the 'common interest' establishes that the withheld communications or documents were otherwise privileged, the 'common interest' doctrine does not come into play." *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill. 2014). Here, for these 291 documents, BHG/Parker has not asserted, much less established, that some other privilege applies—a prerequisite for any attempt to invoke a common-interest exception.

Nor could BHG/Parker establish a privilege for the remaining 183 documents that identify both the attorney-client privilege and common interest privilege as a withholding basis. Anything shared with, or sent by, Moore is not privileged. Moore and Parker have never shared an attorney-client relationship. With no attorney-client relationship, there is no privilege: "[t]he attorney-client privilege exists only if an attorney-client relationship exists." *Vaccaro v. MSG (Illinois),*

[9] These privilege logs are attached as Exhibits 5 and 6.

*Inc.*, 789 F. Supp. 924, 927 (N.D. Ill. 1992). Nor does it matter that some of the withheld documents that copied Moore, were sent to, or were sent by, Parker's former counsel—"privilege is waived when an attorney and his client communicate in the presence of a third person, or they voluntarily share this information with a third party." *Rubloff Dev. Grp., Inc. v. Saint Consulting Grp., Inc.*, No. 10 C 3917, 2011 WL 2600761, at *5 (N.D. Ill. June 30, 2011). Moore disclaimed any attorney-client relationship with BHG/Parker's former counsel. *See e.g.*, ECF 224-4 at 26 (Moore telling former counsel Blank Rome L.L.P. that Moore was never a client and was "a fact witness to the events"); Ex. 7, Moore's Demand to McDermott (same).[10] Likewise, approximately 120 documents were sent by, sent to, or copied Maria Baravalle, who is another former Spectrum employee and who is not an attorney. There is no good faith basis in law or fact for claiming an attorney-client privilege in any communications involving Moore or Baravalle, and BHG/Parker's assertions of attorney client privilege are facially frivolous. *See e.g.*, Ex. 5 at 2, Log 12 (asserting attorney client privilege over Moore's arbitration complaint against Spectrum); Ex. 6 at 1, Logs 1-5 (asserting attorney-client privilege over e-mails between only Moore and BHG/Parker); Ex. 6 at 35, Log 232 (asserting attorney client privilege over an e-mail sent from Parker to Baravalle, neither of whom are attorneys).

Second, "[i]n this, as in most Circuits, the 'common interest' doctrine will only apply "where the parties undertake a joint effort with respect to a common *legal* interest." *Miller*, 17 F. Supp. 3d at 732. "And, for the doctrine to apply, and the person with whom the privileged information is shared with must have an *identical* —not merely similar—*legal* interest in the subject matter of the communication, which must be made in the course of furthering the ongoing, common enterprise." *McCullough*, 304 F.R.D. at 239 (emphasis in original). Moore and Parker

[10]McDermott withdrew the confidentiality designation for Exhibit 7 on May 13, 2026. ECF No. 243-8.

do not have an identical legal interest. "A shared rooting interest in the 'successful outcome of a case'. . . is not a common legal interest." *Miller*, 17 F. Supp. 3d at 732; see *also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D.Ill.2008) (funding agreement giving third party percentage of proceeds from award if plaintiff prevails does not create a common legal interest). The lack of an identical legal interest is yet another reason that there is no plausible basis to withhold these documents under a "common-interest" theory.

Third, none of the 458 documents copying or including Parker are entitled to common interest protection. "To be eligible for continued protection [under the common-interest doctrine], the communication must be shared with the *attorney* of the member of the community of interest." *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) (emphasis in original) (citation omitted). "Sharing a privileged communication directly with a member of the community of interest may destroy the privilege." *Id.* "[M]embers of the interested 'community' are not free to share recollections and pool information on their own without losing the protections of the doctrine." *Id.* So, to the extent that any communications from Moore copied BHG/Parker, any privilege that might otherwise attach is destroyed.

The documents BHG/Parker *did* produce confirm how improper the privilege assertions concerning anything between Moore and Parker are, and make plain that Moore and BHG/Parker's real goal is obstructing discovery—hiding evidence of their wrongful conduct in an attempt to delay the adjudication of this case on the merits while they continue to try to leverage Spectrum's confidential information for their own personal gain. Ex. 1, PARKERBHG-0001694 (Moore writing "Re Docs to be released . . . just release the Nadia one . . . NOT the others . . . These guys want to drain what we know dry . . . NO – Not getting docs from us . . . NOPE").

BHG/Parker and Moore are not entitled to hide the very evidence of their wrongdoing by

(frivolously) claiming privilege. If anything, these communications and privilege log subject lines reveal that any theoretical attorney-client privilege would be subject to the crime-fraud exception.[11] This Court should compel BHG/Parker to produce all of the documents on the two privilege logs.

**E. The Court should allow Spectrum 60 days following receipt of these documents to conduct depositions or seek additional discovery related to these documents.**

As detailed above, Spectrum has repeatedly and diligently attempted to obtain complete production from BHG/Parker. Despite those efforts, BHG/Parker have not completed that production, and have improperly withheld documents. It has thus become impossible for Spectrum—through no fault of its own—to conduct a deposition or additional discovery related to documents that BHG/Parker have not yet produced with only days left before the fact discovery cutoff. Good cause exists for the modification, and Spectrum thus respectfully requests that the Court modify the scheduling order for the limited purpose of allowing Spectrum 60 days to conduct any deposition(s) or seek additional discovery related to the documents sought in this motion.

**CONCLUSION**

Spectrum respectfully requests that the Court enter an order compelling BHG/Parker to complete production of documents responsive to Spectrum's requests, compelling BHG/Parker to re-produce the inappropriately redacted documents, compelling BHG/Parker to produce the 474 withheld documents, and modifying the scheduling order for the limited purpose of allowing

[11] Take also, for example, PARKERBHG-0002907, attached as Exhibit 8, a December 5, 2024 e-mail from Parker to Moore attaching Spectrum's complaint and TRO request in this lawsuit—the day it was filed. Compare that with Moore's statement to this Court nearly four months later at the same February 27, 2025 hearing that she did not "have a copy of the complaint." Ex. 9, at 12:1-2; *see also id.* 11:13-12:10. The production includes other documents further demonstrating Moore's intentional deception. After BHG/Parker's former attorney, Evan Gotlob, felt the need to correct Moore's false claim "as an officer of the Court," Ex. 9 at 12:11-13, Moore e-mailed Parker in real time, calling Mr. Gotlob a "piece of [excrement]" and saying she would "never talk[] to Evan ever again." Ex. 10, PARKERBHG-0003656 (Moore's February 27, 2025 e-mails to Parker during PI hearing).

Spectrum 60 days following receipt of the documents addressed in this motion to conduct deposition(s) or seek additional discovery related to these documents.

Dated: May 18, 2026

**BAKER BOTTS L.L.P.**

*/s/ Kevin M. Sadler*______________
Kevin M. Sadler (*pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Tel: (650) 739-7500

Scott D. Powers (*pro hac vice*)
Andrew B. Swallows (*pro hac vice*)
401 South 1st Street, Suite 1300
Austin, Texas 78704
Tel: (512) 322-2500

John B. Lawrence (*pro hac vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Tel: (214) 953-6873

James J. Beha II (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2500

*Counsel for Plaintiff*

**CERTIFICATE OF CONFERENCE**

As detailed in the motion, counsel for Spectrum have repeatedly attempted to resolve the production issues raised in this motion over a period of several months. BHG/Parker have failed to produce all of the documents responsive to Spectrum's requests, and have improperly withheld documents, necessitating this motion.

*/s/ Scott D. Powers*
Scott D. Powers

**CERTIFICATE OF SERVICE**

The undersigned certifies that, in addition to electronic notice through the Court's cm/ecf system as requested by Moore (*see* ECF Nos. 130, 131), on May 18, 2026, a copy of the foregoing document was served on Moore via the email below at Moore's request.

*/s/ Kevin M. Sadler*
Kevin M. Sadler

Kellie Ann Moore
10522 Covington Circle
Villa Park, CA 92861
(818) 272-3253
biomedlegal@gmail.com

*Pro se*